STATE OF NORTH DAKOTA | IN DISTRICT COURT

COUNTY OF GRAND FORKS | NORTHEAST CENTRAL JUDICIAL DISTRICT

First Western Bank & Trust,

Plaintiff,

vs.

Khaled Rabadi,

Defendant.

Case No. 18-2026-CV-00864

**MOTION FOR SUMMARY JUDGMENT**

[¶ 1] **COMES NOW** Plaintiff First Western Bank & Trust by and through their attorney, and moves the Court to enter summary judgment for it in accordance with the provisions of N.D.R.Civ.P. 56(c)(3) on the grounds that there is no genuine issue as to any material fact, and Plaintiff is entitled to judgment as a matter of law. This motion is based upon all of the records and files herein, and upon the accompanying brief, affidavit, and exhibits.

Dated this 1st day of October, 2026.

OLSON & BURNS P.C.

/s/ Nici Meyer
Richard P. Olson (Bar ID #03183)
Nici Meyer (Bar ID #05733)
Attorneys for Plaintiff
17 First Avenue SE
PO Box 1180
Minot, ND 58702-1180
(701) 839-1740
rpolson@minotlaw.com
nmeyer@minotlaw.com

STATE OF NORTH DAKOTA | IN DISTRICT COURT

COUNTY OF GRAND FORKS | NORHTEAST CENTRAL JUDICIAL DISTRICT

First Western Bank & Trust,

Plaintiff,

v.

Khaled Rabadi,

Defendants.

**CASE NO. 18-2026-CV-00864**

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

[¶ 1] Plaintiff First Western Bank & Trust (the "Bank" or "First Western") hereby submits its BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT against the Defendant, Khaled Rabadi.

## STATEMENT OF THE ISSUE

[¶ 2] Whether there exists any genuine issue of material fact precluding summary judgment where the undisputed evidence establishes: (1) The Kidney and Hypertension Center, PLC, KDJ Properties, LLC, and KDJ Investment Group, LLC (hereafter collectively referred to as "Borrowers") executed promissory notes for the loans set for the in the Complaint and Affidavit of Gerald A. Brossart; (2) the loans are in default; (3) Defendant, Kahled Rabadi executed unlimited and unconditional Commercial Guaranties guarantying the payment of the indebtedness under the loans of the Borrowers; and (4) the guaranties were in full force and effect at the time of default.

## BACKGROUND AND FACTS

[¶ 3] The Bank brought this to enforce Commercial Guaranties executed by Khaled Rabadi in connection with a loans made to The Kidney and Hypertension Center PLC, KDJ Properties, LLC, and KDJ Investment Group, LLC.

[¶ 4] First Western is a North Dakota banking corporation with its principal office in Minot, North Dakota. *Aff. of Gerald A. Brossart* ¶ *4, October 1, 2026.* Defendant Khaled Rabadi is a Grand Forks resident. Brossart Aff. ¶ 5.

**Loan No. 614360**

[¶ 5] Loan No. 614360 traces to an August 14, 2020 promissory note for Loan No. 1600091 by KDJ Investment Group LLC, through Khaled Rabadi, to BlackRidge Bank in the principal amount of $5,213,138.00. Brossart Aff. ¶ 6. On August 14, 2020, Khaled Rabadi executed a Commercial Guaranty, guarantying the full and punctual payment of the indebtedness of KDJ Investment Group, LLC. *Exhibit 2 to Brossart Aff.* ¶¶*8-9.* The August 14, 2020 Commercial Guaranty was required as a condition to making the loan to KDJ Investment Group LLC. *Brossart Aff.* ¶ *7.*

[¶ 6] BlackRidge Bank merged with First Western on November 13, 2020, with First Western as the surviving entity. *Brossart Aff.* ¶ *10.*

[¶ 7] KDJ Investment Group LLC later executed additional notes with First Western, including April 20, 2022 and November 23, 2022 notes increasing the loan amount. *Brossart Aff.* ¶¶ *11-12.* On December 31, 2024, KDJ Investment Group LLC executed Promissory Note No. 614360 as a



Olson & Burns P.C.
P.O. Box 1180
Minot, ND 58702

renewal or refinance, in the principal amount of $3,559,645.83, with payments beginning June 15, 2025 and a final maturity date of October 15, 2033. *Brossart Aff.* ¶ *13.*

[¶ 8] Note 614360 is in default because KDJ Investment Group LLC failed to make payments beginning July 15, 2025, failed to make subsequent payments, and failed to pay real estate taxes when due. *Brossart Aff.* ¶¶ *14-15.*

**Loan No. 1600301**

[¶ 9] On December 23, 2020, KDJ Properties, LLC executed Promissory Note No. 1600301 to First Western in the principal amount of $386,000.00, with monthly payments beginning January 25, 2021 and a final payment due December 25, 2025. *Brossart Aff.* ¶ *17.* On December 23, 2020, Khaled Rabadi executed a Commercial Guaranty, guarantying the full and punctual payment of the indebtedness of KDJ Properties, LLC. *Exhibit 8 to Brossart Aff.* ¶¶ *19-20.* Note 1600301 is in default because it matured on December 25, 2025 and KDJ Properties, LLC failed to make the final payment, and because KDJ Properties, LLC failed to pay real estate taxes when due. *Brossart Aff.* ¶¶ *21-22.*

**The Kidney & Hypertension Center Loans**

[¶ 10] The Kidney & Hypertension Center PLC executed a series of promissory notes, commercial security agreements, and related loan documents in favor of First Western. The Facts document identifies Loan Nos. 614359, 509021/614363, 614364, and 51436599. Brossart Aff. ¶¶ 24-62.

[¶ 11] For Loan No. 614359, The Kidney & Hypertension Center PLC executed an August 10, 2022 note for Loan No. 510514. *Brossart Aff.* ¶ *24.* On August 10, 2022, Khaled Rabadi executed

a Commercial Guaranty, guarantying the full and punctual payment of the indebtedness of The Kidney & Hypertension Center PLC. *Exhibit 10 to Brossart Aff. ¶¶ 26-27.* On December 31, 2024, The Kidney & Hypertension Center PLC executed Promissory Note No. 614359 as a refinance of Loan No. 510514, in the principal amount of $720,762.34, with payments beginning June 5, 2025. *Brossart Aff. ¶ 28.* Note 614359 is in default because The Kidney & Hypertension Center PLC failed to make the August 5, 2025 payment and all subsequent payments. *Brossart Aff. ¶ 29.*

[¶ 12] For Loan No. 509021/614363, The Kidney & Hypertension Center PLC executed an August 17, 2021 note for Loan No. 509021. Brossart Aff. ¶¶ 31. On August 17, 2021, Khaled Rabadi, executed a Commercial Guaranty, guarantying the full and punctual payment and satisfaction of the indebtedness of The Kidney & Hypertension Center PCE under Loan No. 509021. *Exhibit 13 to Brossart Aff. ¶¶ 33-34.* On December 31, 2024, The Kidney & Hypertension Center PLC executed Promissory Note No. 614363 to renew or refinance the prior obligation, in the principal amount of $996,882.00, with payments beginning July 15, 2025. Brossart Aff. ¶ 39. Note 509021/614363 is in default because The Kidney & Hypertension Center PLC failed to make the July 15, 2025 payment and all subsequent payments. *Brossart Aff. ¶ 38.*

[¶ 13] For Loan No. 614364, First Western consolidated and refinanced or renewed Loan Nos. 1006327, 509422, 610932, and 512448. *Brossart Aff. ¶ 40.* On December 23, 2020, in connection with Loan 1006327, Khaled Rabadi executed a Commercial Guaranty guarantying the full and punctual payment of the indebtedness of The Kidney & Hypertension Center PLC under Loan No. 1006327. *Exhibit 16 and 17 to Brossart Aff. ¶¶ 41-44.* On December 28, 2021, in connection with Loan No. 509422, Khaled Rabadi executed a Commercial Guaranty guarantying the full and

punctual payment of the indebtedness of The Kidney & Hypertension Center PLC under Loan No. 509422. *Exhibit 18 and 19 to Brossart Aff. ¶¶ 45-48.* On November 23, 2022, in connection with Loan No. 610923, Khaled Rabadi executed a Commercial Guaranty guarantying the full and punctual payment of the indebtedness of The Kidney & Hypertension Center PLC under Loan No. 610923. *Exhibit 20 and 21 to Brossart Aff. ¶¶ 49-52.* On September 28, 2023, in connection with Loan No. 512448, Khaled Rabadi executed a Commercial Guaranty guarantying the full and punctual payment of the indebtedness of The Kidney & Hypertension Center PLC under Loan No. 512448. *Exhibit 23 and 24 to Brossart Aff. ¶¶ 54-57.* To refinance Loan Nos. 1006327, 509422, 610932, and 512448, The Kidney & Hypertension Center PLC executed Promissory Note No. 614364 on December 31, 2024 in the principal amount of $1,189,188.04, with payments beginning June 9, 2025 and final maturity on June 9, 2026. *Brossart Aff. ¶ 58.* Note 614364 is in default because The Kidney & Hypertension Center PLC failed to make the August 9, 2025 payment and all subsequent payments, and because of failure to pay real estate taxes on mortgaged property serving as security for Note 614364. *Brossart Aff. ¶¶ 59-60.*

[¶ 14] For Loan No. 51436599, The Kidney & Hypertension Center PLC executed a December 31, 2024 note in the principal amount of $468,629.98. Brossart Aff. ¶ 62. On December 31, 2024, in connection with Loan No. 51436599, Khaled Rabadi executed a Commercial Guaranty guarantying the full and punctual payment of the indebtedness of The Kidney & Hypertension Center PLC under Loan No. 51436599. *Exhibit 27 to Brossart Aff. ¶¶ 64-65.* Note 51436599 is in default based on other defaults by The Kidney & Hypertension Center PLC and the failure to pay real estate taxes for 2023, 2024, and 2025. **Brossart Aff. ¶ 66.**

[¶ 15] Defendant denies allegations not specifically admitted, repeatedly stating the documents "speak for themselves". *(R25.)* Defendants assert affirmative defenses for failure to state a claim; estoppel or waiver; unclean hands; mistake, fraud or inequitable conduct; accord and satisfaction; and the parole evidence rule but does not plead supporting facts for those defenses. *(R25:p.4.)*

**<u>The Commercial Guaranties</u>**

[¶ 16] The Commercial Guaranties executed by Defendant all unequivocally state that the "Guaranty absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related documents." *Exhibits 2, 8, 10, 13, 17, 19, 21, and 24 to Brossart Aff.* In each of the Commerial Guaranties, the term "Indebtedness" refers to "all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that the Borrower individually or collectedly or interchangeably with others, owes or will owe Lender." *id.* Each of the Commercial Guaranties also provided that "'Indebtedness' includes, without limitation, loans, advances…and other obligations, and liabilities of Borrower, . . . future advances, **loans or transactions that renew, extend, modify, refinance, consolidate of substitute these debts, liabilities and obligations**…." *id.* The amount of each Commercial Guaranty is unlimited. *id. (emphasis added.)*

**<u>The Answer of Defendant</u>**

[¶ 17] Khaled Rabadi filed his Answer on May 15, 2026, which denies liability to the Bank but does not dispute the existence of the debt owed by Borrowers or the fact that the Commercial Guaranties were executed. *(R25.)* The Answer raises various affirmative defenses including failure to state a claim, estoppel or waiver, unclean hands, mistake, fraud, or inequitable conduct, accord and satisfaction, and parole evidence rule. (*R25: Pg 4: ¶ 1-6.)*

## LAW AND ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

[¶ 18] Under Rule 56(c) of the North Dakota Rules of Civil Procedure, "[t]he judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." N.D.R.Civ.P. Rule 56(c). "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *JPMorgan Chase Bank, N.A. v. Skoda, 2014 ND 67, ¶5, 844 N.W.2d 870. (internal citation omitted).* The party moving for summary judgment has the burden of showing summary judgment is appropriate. *Johnson v. Bronson, 2013 ND 78, ¶ 9, 830 N.W.2d 595.* A grant of summary judgment is also appropriate "if resolving factual disputes will not alter the result." *Nichols v. Goughnour, 2012 ND 178, ¶ 9, 820 N.W.2d 740.* In adjudging the motion, the Court must view the evidence in the light most favorable to the non-moving party and give the non-moving party the benefit of all favorable inferences which can be reasonable drawn from the record. *Johnson at ¶ 9.*



Olson & Burns P.C.
P.O. Box 1180
Minot, ND 58702

[¶ 19] If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact. *Barbie v. Minko Constr., Inc., 2009 ND 99 ¶ 6, 766 N.W.2d 458, Resolution Tr. Corp. v. Gosbee, 536 N.W.2d 698, 700 (N.D. 1995), Am. State Bank & Tr. Co. v. Sorenson, 539 N.W.2d 59, 61 (N.D. 1995).* The party opposing the motion cannot simply rely on the pleading and unsupported, conclusory allegations; rather, they must present competent admissible evidence raising an issue of material fact and must draw the court's attention to relevant evidence in the record raising a material fact. *Am. Fed. Bank v. Grommesh, 2021 ND 228 ¶28, 968 N.W.2d 164.* Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *id.*

[¶ 20] Specifically addressing commercial cases, the North Dakota Supreme Court discussed which types of cases are more suitable for summary judgment:

> Summary judgment may be used in all types of litigation, but some cases lend themselves more readily to summary judgment adjudication than others. As the Supreme Court of South Dakota noted, '[s]tatistics show it is granted more frequently in actions on notes and for debts than in other kinds of cases.' (citations omitted).

*Pioneer Credit Company v. Medalen, 326 N.W.2d 717, 719 (N.D. 1982), quoting Bourk v. Iseman Mobile Homes, Etc., 316 N.W.2d 343, 344 (S.D. 1982) (recognizing that "[s]tatistics show it is granted more frequently in actions on notes and for debts than in other kinds of cases. . . .").* This particular action, with the clear existence of the debts, defaults, and guaranties is a textbook example of a case suitable for summary judgment.

## II. THE COMMERCIAL GUARANTY AGREEMENTS ENCOMPASSES THE BORROWER'S RENEWED, EXTENDED, MODIFIED, REFINANCED, CONSOLIDATED, SUBSTITUTED, AND FUTURE-ADVANCED INDEBTEDNESS.

[¶ 21] All but two of the loans for which First Western has sought to enforce the Commercial Guaranty agreements on Defendant Khaled Rabadi, are based upon renewals, refinances, or consolidations of the original obligation. The Commercial Guarany agreements given for Loan No. 1600301 and Loan No. 51436599 are being enforced against the original obligation.

[¶ 22] The following table provides an illustration of the loans and their renewals or refinancing:

<table>
<tr><th>Borrower</th><th>Original Obligation #</th><th>Exhibit # of Note for Original Obligation</th><th>Exhibit # of Commercial Guaranty</th><th>Original, Renewal, Refinance or Consolidation Loan</th><th>Exhibit # of Note for Renewal, Refinance or Consolidation</th></tr>
<tr><td>KDJ Investment Group, LLC</td><td>1600091</td><td>1</td><td>2</td><td>614360</td><td>13</td></tr>
<tr><td>KDJ Properties, LLC</td><td>1600301</td><td>7</td><td>8</td><td>1600301</td><td>7</td></tr>
<tr><td>The Kidney & Hypertension Center PLC</td><td>510514</td><td>9</td><td>10</td><td>614359</td><td>11</td></tr>
<tr><td>The Kidney & Hypertension Center PLC</td><td>509021</td><td>12</td><td>13</td><td>509021/614363</td><td>15</td></tr>
<tr><td>The Kidney & Hypertension Center PLC</td><td>100327</td><td>16</td><td>17</td><td rowspan="4">614364</td><td rowspan="4">25</td></tr>
<tr><td>The Kidney & Hypertension Center PLC</td><td>509422</td><td>18</td><td>19</td></tr>
<tr><td>The Kidney & Hypertension Center PLC</td><td>610932</td><td>20</td><td>21</td></tr>
<tr><td>The Kidney & Hypertension Center PLC</td><td>512448</td><td>23</td><td>24</td></tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| The Kidney & Hypertension Center PLC | 51436599 | 26 | 27 | 51436599 | 26 |

[¶ 23] The existence of the underlying debt and the default by Borrowers is undisputed. Borrowers executed and delivered the promissory notes original obligations set forth in the Affidavit of Gerald Brossart. *Brossart Aff.* ¶¶ *6, 17, 24, 31, 41, 45, 49, & 54.* At the time those promissory notes were executed, the Defendant, Khaled Rabadi, executed and delivered a Commercial Guaranty, guaranteeing the indebtedness of each of the Borrowers. *id. at* ¶¶ *8, 19, 26, 33, 43, 47, 51, & 56.* There is no question that the Guaranty Agreements executed and delivered for the two original obligations for Loan No. 1600301 and Loan No. 51436599, may be enforced to collect the indebtedness under those loans, and First Western is entitled to a judgment against Defendant Khaled Rabadi's liability under the guaranty.

[¶ 24] The existence of the underlying debt and the default by Borrowers is undisputed. Borrowers executed and delivered the promissory notes original obligations set forth in the Affidavit of Gerald Brossart. *Brossart Aff.* ¶¶ *6, 17, 24, 31, 41, 45, 49, & 54.* At the time those promissory notes were executed, the Defendant, Khaled Rabadi, executed and delivered a Commercial Guaranty, guaranteeing the indebtedness of each of the Borrowers. *id. at* ¶¶ *8, 19, 26, 33, 43, 47, 51, & 56.* The Commerial Guaranty agreements are not limited to the Borrowers' original loans. Each Commercial Guaranty agreements define "Indebtedness" to include without limitation "loans, advances…and other obligations, and liabilities of Borrower, . . . future advances, **loans or transactions that renew, extend, modify, refinance, consolidate of substitute these debts, liabilities and obligations**…." *Exhibits 2, 8, 10, 13, 17, 19, 21, and 24 to Brossart Aff.* (emphasis added). This language resolves any question as to the Commercial

Guaranty agreements applicability to the refinancing, renewal or consolidation of original obligations of the Borrowers.

[¶ 25] North Dakota law gives effect to the plain language of an unambiguous guaranty. The clear meaning of a guaranty cannot be ignored, and unless the guaranty is ambiguous, its interpretation is governed by the writing alone. *Am. Fed. Bank v. Grommesh, 2021 ND 228, ¶ 19.*

[¶ 26] North Dakota caselaw confirms that materially identical language covers future and successive indebtedness. In a case involving a guaranty defining "Indebtedness" to include "loans, advances" and future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute the borrower's debts and obligations, the court held that the guaranty was limited only by its stated dollar cap and that "no language limits the guaranties to only the original loan." *Am. Fed. Bank v. Grommesh, 2021 ND 228, ¶14; 968 N.W2d 164.* The court further concluded that guaranties using that language "expressly include[s] other debts, including debts arising in the future." *id.* The same result follows here: the guaranty's definition of "Indebtedness" expressly reaches the borrower's renewed, extended, modified, refinanced, consolidated, substituted, and future-advanced obligations.

[¶ 27] That reading also follows from the statutory definition of a continuing guaranty. A "continuing guaranty" is "a guaranty relating to a future liability of the principal under successive transactions which either continue the liability or from time to time renew it after it has been satisfied." *NDCC § 22-01-01(1)*. The Commercial Guaranty agreements here use forward-looking language, covering not only existing obligations but also future advances and transactions that renew, extend, modify, refinance, consolidate, or substitute the borrower's obligations.

[¶ 28] The later indebtedness owed by Borrowers to First Western, falls within the Commercial Guaranty agreements' definition of "Indebtedness." Because the guaranty unambiguously covers

those obligations, the Court should enforce it as written and grant summary judgment in favor of First Western on Khaled Rabadi's liability under the guaranty.

## III. THE LOANS TO BORROWERS ARE IN DEFAULT UNDER THE TERMS OF THE PROMISSORY NOTES.

[¶ 29] Borrowers have failed to make the required payments on the loans and are in default. *Brossart Aff.* ¶¶ *14, 21, 29, 38, 59 & 66. See also Exhibits 28-33 to the Brossart Aff.* Additionally, Borrowers are in default for failure to pay property taxes when due on the property mortgaged as security for the various notes, with the real estate taxes for the years 2023 and 2024 being unpaid and delinquent. *Brossart Aff.* ¶¶ *15, 22, 30, 29, 60, and 66. See also Exhibits 34-35 to the Brossart Aff.* The Bank has accelerated the amount due on the notes pursuant to their terms. *Brossart Aff.* ¶*71.*

[¶ 30] Khaled Rabadi has not come forward with competent admissible evidence disputing the existence of the indebtedness of the Borrowers, the occurrence of defaults, or the amount owed. The Defendant's Answers merely offers generic denials to the bulk of allegations in the Complaints, on the basis that the alleged documents speak for themselves and denies any remaining allegations. (*R25.)* While denying the allegations in the Complaint, the Defendant fails to assert any facts to dispute that the Borrowers have entered into the promissory notes obligating them to the Bank. (*R25.)* This is insufficient to create a genuine issue of material fact under Rule 56. When a party merely states it lacks sufficient knowledge to admit or deny allegations, without presenting competent evidence raising an issue of material fact, summary judgment is proper. *Am. Fed. Bank v. Grommesh, 2021 ND 228* ¶*28.*

## IV. UPON BORROWERS' DEFAULT ON THE LOANS, DEFENDANT'S OBLIGATIONS UNDER THE COMMERIAL GUARANTIES WERE TRIGGERED.

[¶ 31] A guarantor's liability is derivative of the principal debtor's obligation. When the principal debtor defaults, the guarantor becomes liable for the debt according to the terms of the guaranty contract. North Dakota guaranty law has long recognized that the liability of an absolute guarantor of payment is established immediately upon the default of the principal debtor, and liability should not have to wait until a later determination by a court to make the liability something less than it was contracted to be. This basic principle of guaranty law is codified in North Dakota at N.D.C.C. § 22-01-10, and was taken up in State Bank of Burleigh County v. Porter, 167 N.W.2d 527 (N.D. 1969), with the court explaining that an absolute guaranty is a contract

> by which the guarantor has promised that if the debtor does not perform his obligation or obligations, the guarantor will perform some act (such as the payment of money) to or for the benefit of the creditor. Thus, a guaranty is classified as absolute even though the liability of the guarantor is conditioned upon the default of the principal debtor. When the guaranty is absolute, and provides for the payment of a specified sum of money at a specified date, liability becomes fixed on default of the debtor. 38 **Am. Jur. 2d, Guaranty**, Sec. 21, p. 1019.

*id. at 532.* It further explained that N.D.C.C. § 22-01-10 "defines a guaranty of payment in terms of liability as follows: A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal and without a demand or notice." *State Bank v. Porter, 167 N.W.2d at 533.*

[¶ 32] Principal debtors, KDJ Investment Group, LLC, KDJ Properties, LLC, and The Kidney & Hypertension Center, PLC have defaulted on their obligations. *Brossart Aff.* ¶¶ *14, 21, 29, 38, 59 & 66.* At the time of default, the absolute and unconditional liability of Defendant for the whole and entire indebtedness of the Borrowers including, all outstanding principal, interest, and late

charges, became fixed and *owed* as pronounced by the North Dakota Supreme Court in State Bank of Burleigh County v. Porter.

### A. The Guaranty Agreements are not Ambiguous; and Under North Dakota Law, they Must be Enforced According to Their Plain Language.

[¶ 33] An action against a guarantor is based on the contract of guaranty. *Alerus Fin., N.A. v. Marcil Grp. Inc., 2011 ND 205, ¶ 19, 806 N.W.2d 160, 169.* Under North Dakota law, contracts are construed to give effect to the parties' mutual intent at the time the contract was formed. N.D.C.C. § 9-07-03. Further, a contract's language will "govern its interpretation if the language is clear and explicit and does not involve an absurdity." *N. Oil & Gas, Inc. v. Moen, 808 F.3d 373, 376 (8th Cir. 2015); N.D.C.C. § 9-07-02.* When a contract is reduced to writing, as it is here, the intention of the parties is to be ascertained from the writing alone. *N.D.C.C. § 9-07-04.* A contract is to be read as a whole so as to give effect to each part or provision. *N.D.C.C. § 9-07-06.* "If the language of the contract is clear and unambiguous, and the intent is apparent from its face, there is no room for further interpretation. In effect, the contracting parties have made their own law." *Roen Land Tr. v. Frederick, 530 N.W.2d 355, 357 (N.D. 1995) (internal citation omitted).* The Commercial Guaranties are clear and unambiguous contracts that absolutely and unconditionally guarantee the full and punctual payment and satisfaction of the indebtedness of Borrowers. *Exhibits 2, 8, 10, 13, 17, 19, 21, and 24 to Brossart Aff.*

[¶ 34] In consideration of and as a condition for Bank making the Loans to the Borrowers, Khaled Rabadi executed separate guaranties in writing whereby he absolutely and unconditionally guaranteed and promised to pay to Bank the indebtedness of the Borrowers under each of the loans set forth in the Complaint. *Exhibits 2, 8, 10, 13, 17, 19, 21, and 24 to Brossart Aff.; Brossart Aff. ¶¶ 7, 16, 25, 32, 42, 46, 50 & 55.*

[¶ 35] Each guaranty specifically provided in the first paragraph of the agreement that Defendants guaranteed payment of the indebtedness of Borrowers:

> **CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

*Exhibits 2, 8, 10, 13, 17, 19, 21, and 24 to Brossart Aff.* This provision is clear and unambiguous and must be enforced according to its ordinary terms under North Dakota contract law.

[¶ 36] Each guaranty also provides in relevant part that the term "Indebtedness" means

> "all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender."

*id.* The language of the guaranty contracts cannot be any clearer and can only be interpreted as obligating the Defendant for *all* debts of Borrowers.

[¶ 37] The words of a contract are given their plain, ordinary, and commonly understood meaning, unless contrary intention plainly appears. N.D.C.C. § 9-07-09. Defendants are guarantors under an

unambiguous guaranty and both liable to Bank for the balance due on Loans as of August 31, 2026 as set forth below:

| | | Principal | Acrueed Intere | Late Fees | Total | Per diem from 8/31/2 | |
|---|---|---|---|---|---|---|---|
| Loan No. | 614360 | $ 3,559,645.83 | $ 430,196.55 | $ 13,000.00 | **$ 4,002,842.38** | $ 741.59 | |
| Borrower | KDJ Investment Group, LLC | | | | | | |
| | | | | | | | |
| Loan No. | 1600301 | $ 343,313.49 | $ 9,499.49 | $ 100.00 | **$ 352,912.98** | $ 38.15 | |
| Borrower | KDJ Properties, LLC | | | | | | |
| | | | | | | | |
| Loan No. | 614359 | $ 720,762.34 | $ 78,537.86 | $ 4,488.25 | **$ 803,788.45** | $ 150.16 | |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |
| | | | | | | | |
| Loan No. | 509021 | $ 996,882.00 | $ 127,725.51 | $ 6,736.66 | **$ 1,131,344.17** | $ 207.68 | |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Loan No. | 614364 | $ 1,189,188.04 | $ 129,562.39 | $ 16,197.68 | **$ 1,334,948.11** | $ 247.75 | |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |
| | | | | | | | |
| Loan No. | 51436599 | $ 468,629.98 | | | **$ 468,629.98** | | |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |

*Brossart Aff.* ¶ *68.*

[¶ 38] As the Court can see from the Defendants' Answers, there exists no specific plausible defense: (1) They executed the guaranties, and (2) those guaranties were in effect at the time of default. These facts establish the essential elements of the Bank's claim under North Dakota guaranty law and are sufficient to support summary judgment unless Defendants can produce competent evidence establishing a valid defense.

### B. Defendants Executed Valid and Enforceable Commercial Guaranties.

[¶ 39] Khaled Rabadi executed the Commercial Guaranties in connection with the original obligation. Defendant offers no facts to dispute that he executed the Commercial Guaranties. Rather, they again rely on the generic allegation that the documents "speak for themselves" *(R25.)* This is insufficient to raise an issue of material fact.

[¶ 40] None of the guaranty agreements had been revoked under the terms contained therein. *Brossart Aff.* ¶. There exists no genuine issue of material fact that guaranty agreements were in full force and effect at the time the loans went into default. It is also irrefutable that in the guaranty agreements Defendant agreed, among other things, to waive any rights to require Bank "to make any presentment, protest, demand or notice of any kind, including notice of any nonpayment. . .." *Brossart Aff.* ¶¶ *16, 23, 30, 39, 60 & 67.*

## V. THE DEFENDANT CANNOT LIMIT HIS LIABILITY THROUGH HIS ALLEGED AFFIRMATIVE DEFENSES.

[¶ 41] The Commercial Guaranties executed by Defendant are unlimited in amount and encompass all indebtedness of Borrowers, to the Bank, including principal, accrued unpaid interest, and all collection costs and legal expenses permitted by law, including reasonable attorneys' fees. The Commercial Guaranties include express waivers agreed to by Defendant. These waivers are enforceable under North Dakota law and prevent Defendant from raising many of the defenses asserted in their Answers.

[¶ 42] The Answer filed by Defendant does not raise any genuine issue of material fact sufficient to defeat the Bank's motion for summary judgment. While Defendant does not admit that he executed the Commercial Guaranties, he again relies on general denials alleging that the documents speak for themselves. *(R25.)* Defendant does not dispute the existence of the underlying debt owed by Borrowers, to the Bank. Defendant does not dispute that Borrowers are in default. The Defendant's general denials are limited to contesting his liability under the Commercial Guaranties and asserting various affirmative defenses. However, these affirmative defenses are either legally insufficient or unsupported by any competent evidence.

[¶ 43] Defendant's defenses are wholly conclusory and unsupported by any factual allegations or evidence. The party resisting summary judgment must present competent admissible evidence that raises an issue of material fact and cannot rely on unsupported, conclusory allegations. *Azure v. Belcourt Pub. Sch. Dist., 2004 ND 128, ¶ 8, 681 N.W.2d 816.*

## CONCLUSION

[¶ 44] The undisputed evidence establishes that: Borrowers are in default; Defendant executed valid, unlimited, and unconditional Commercial Guaranties; The guaranties were in effect when default occurred; and Defendant has failed to produce competent evidence creating a genuine issue of material fact.

[¶ 45] Accordingly, the Bank respectfully requests that the Court enter summary judgment against Khaled Rabadi in the full amount of the indebtedness together with interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

Dated this 1st day of October, 2026.

OLSON & BURNS P.C.

/s/ Nici Meyer

Richard P. Olson (ID 03183)
Nici Meyer (Bar ID #05733)
Attorneys for Plaintiff United Community Bank of ND
17 First Avenue SE
P.O. Box 1180
Minot, ND 58702-1180
(701) 839-1740
rpolson@minotlaw.com
nmeyer@minotlaw.com

| | |
|---|---|
| STATE OF NORTH DAKOTA | IN DISTRICT COURT |
| COUNTY OF GRAND FORKS | NORTHEAST CENTRAL JUDICIAL DISTRICT |

| | | |
|---|---|---|
| First Western Bank & Trust,<br>Plaintiff,<br>v.<br>Khaled Rabadi,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 18-2026-CV-00864<br><br>**AFFIDAVIT OF GERALD A. BROSSART** |

---

[¶ 1] I, Gerald A. Brossart, being duly sworn upon oath, depose and state as follows:

[¶ 2] I am employed as a loan officer by First Western Bank & Trust ("First Western") and have personal knowledge of First Western's records regarding the loan transactions, mortgages, commercial security agreements and Letter of Understanding to assign land contract that are the subject of this foreclosure action.

[¶ 3] That prior to being employed by First Western, I was employed at BlackRidge Bank as a loan officer and have personal knowledge of the records regarding the loan transaction and mortgage that originated with BlackRidge Bank that is subject of this foreclosure action.

[¶ 4] First Western Bank & Trust is a banking corporation chartered under the laws of North Dakota with its principal office at Minot, North Dakota.

[¶ 5] Defendant Khaled Rabadi is an individual person and a resident of Grand Forks, North Dakota.

**LOAN 614360**



Olson & Burns P.C.
P.O. Box 1180
Minot, ND 58702

[¶ 6] On August 14, 2020, KDJ Investment Group LLC by and through Khaled Rabadi its owner and managing member, entered into a Promissory Note for Loan No. 1600091 with BlackRidge Bank ("Note 0091") for the principal amount of $5,213,138.00 with an original interest rate of 4.500%. A true and correct copy of Note 0091 is attached as Exhibit 1.

[¶ 7] As a condition of making Loan No. 1600091, to KDJ Investment Group, LLC, the Bank required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 8] On August 14, 2020, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by KDJ Investment Group, LLC for Loan No. 1600091.

[¶ 9] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 2.

[¶ 10] On November 13, 2020, BlackRidge Bank merged with First Western with First Western being the surviving entity. A true and correct copy of the Articles of Merger are attached as Exhibit 3.

[¶ 11] On April 20, 2022, KDJ Investment Group LLC by and through Khaled Rabadi, its owner, entered into a Promissory Note with First Western in order to increase the loan amount for Note 0091. A true and correct copy of this April 20, 2022 Note is attached as Exhibit 4.

[¶ 12] On November 23, 2022, KDJ Investment Group LLC by and through Khaled Rabadi, its owner, entered into a Promissory Note with First Western in order to increase the loan amount for Note 0091. A true and correct copy of the November 23, 2022 Note is attached as Exhibit 5.

[¶ 13] On December 24, 2024, KDJ Investment Group, LLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 614360 with First Western ("Note

4360") as a renewal or refinance for Note 0091/Loan No. 1600091, with the renewed principal amount being $3,559,645.83 at an initial interest rate of 7.500%. Payments under Note 4360 were due and payable as follows: 65 monthly payments in the initial amount of $25,883.06 beginning on June 15, 2025 using an interest rate of 7.5000%; then 35 monthly payments in the estimated amount of $25,883.06 beginning November 15, 2030 with interest on the unpaid principal balances using an interest rate based on the 5 year federal home loan advance rate, plus a margin of 3.500 percentage points, with a final payment of all remaining principal and interest due on October 15, 2033. A true and correct copy of Note 4360 is attached as Exhibit 6.

[¶ 14] Note 4360 is in default as KDJ Investment Group, LLC has failed to make payments beginning on July 15, 2025, and subsequent payments and is in default for failure to make payment when payments are due.

[¶ 15] Note 4360 is in default as KDJ Investment Group, LLC has failed to pay real estate taxes when due.

[¶ 16] That the Commercial Guaranty dated August 14, 2020 at Exhibit 2, was in full force and effect and unrevoked at the time Note 4360 went into default.

**LOAN 1600301**

[¶ 17] On December 23, 2020, KDJ Properties, LLC, by and through its manager/governor Khaled Rabadi, entered into a Promissory Note for Loan No. 1600301 with First Western ("Note 0301"), for the principal amount of $386,000.00 with an original interest rate of 4.00%. Payments under Note 0301 were due and payable as follows: 59 monthly payments of $1,950.00 beginning



Olson & Burns P.C.
P.O. Box 1180
Minot, ND 58702

on January 25, 2021, with a final payment of all remaining principal and interest due December 25, 2025. A true and correct copy of Note 0301 is attached as Exhibit 7.

[¶ 18] As a condition of making Loan No. 1600301, to KDJ Properties, LLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 19] On December 23, 2020, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by KDJ Properties, LLC for Loan No. 1600301.

[¶ 20] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 8.

[¶ 21] Note 0301 is in default as it matured on December 25, 2025 with payment for all principal and all accrued interest due at that time. KDJ Properties, LLC has failed to make failed to make the final payment on December 25, 2025.

[¶ 22] Note 0301 is in default as KDJ Properties, LLC has failed to pay real estate taxes when due.

[¶ 23] That the Commercial Guaranty dated December 23 , 2020 at Exhibit 8, was in full force and effect and unrevoked at the time Note 0301 went into default.

**Loan 614359**

[¶ 24] August 10, 2022, The Kidney & Hypertension Center PLC, by and though Khaled Rabadi, its management member, entered into a Promissory Note for Loan No. 510514 ("Note 0514") with First Western for the principal amount of $805,343.00, with an original interest rate of 4.500%. A true and correct copy of Note 0514 is attached as Exhibit 9.

[¶ 25] As a condition of making Loan No. 510514, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 26] On August 10, 2022, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC for Loan No. 510514.

[¶ 27] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 10.

[¶ 28] On December 31, 2024, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 614359 with First Western ("Note 4359") as a renewal for Note 0514, with the renewed principal amount being $720,762.34 at an initial interest rate of 7.500%. Payments under Note 4359 were due and payable as follows: 86 monthly payments in the initial amount of $6,904.90 beginning on June 5, 2025, with a final payment of all remaining principal and interest due on August 5, 2032. A true and correct copy of Note 4359 is attached as Exhibit 11.

[¶ 29] Note 4359 is in default, as The Kidney & Hypertension Center PLC has failed to make payments when payments were due by failing to make the payment due on August 5, 2025, and failing to make all subsequent payments as they have become due.

[¶ 30] That the Commercial Guaranty dated August 10, 2022 at Exhibit 10, was in full force and effect and unrevoked at the time Note 4359 went into default.

**LOAN 509021/614363**

[¶ 31] August 17, 2021, The Kidney & Hypertension Center PLC, by and though Khaled Rabadi, its management member, entered into a Promissory Note for Loan No. 5509021 ("Note 9021") with First Western for the principal amount of $1,000,000.00, with an original interest rate of 4.500%. A true and correct copy of Note 9021 is attached as Exhibit 12.

[¶ 32] As a condition of making Loan No. 5509021, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 33] On August 17, 2021, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC for Loan No. 5509021.

[¶ 34] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 13.

[¶ 35] On October 4, 2021, The Kidney & Hypertension Center PLC executed a Change in Terms Agreement in which the maturity date of Note 9021 was extended to August 15, 2031 and the interest rate fixed at 8.250%, in which The Kidney & Hypertension Center PLC was required to make 33 consecutive monthly interest payments beginning on November 15, 2023, then 60 monthly consecutive principal and interest payments beginning August 15, 2026. A true and correct copy of the change in terms agreement is attached as Exhibit 14.

[¶ 36] The Kidney & Hypertension Center PLC, was in default on Note 9021 for failure to make payment when payment was due, by failing to make its monthly interest payments beginning April 15, 2025. In order to provide an opportunity for The Kidney & Hypertension Center PLC to cure its default, on December 31, 2024, The Kidney & Hypertension Center PLC, by and through



Olson & Burns P.C.
P.O. Box 1180
Minot, ND 58702

Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 614363 with First Western ("Note 4363") to renew or refinance Note 9021, with the principal amount being $996,882.00 at an initial interest rate of 7.500%. Payments under Note 4363 were due and payable as follows: 73 monthly payments in the initial amount of $9,623.76 beginning on July 15, 2025, with a final payment of all remaining principal and interest due on August 15, 2031. A true and correct copy of Note 4363 is attached as Exhibit 15.

[¶ 37] While the loan number was changed in Note 4363, First Western maintains this loan in their system as Note 9021.

[¶ 38] Note 4363, also known as Note 9021, is in default, as The Kidney & Hypertension Center PLC has failed to make payments when payments were due by failing to make the payment due on July 15, 2025, and failing to make all subsequent payments as they have become due.

[¶ 39] That the Commercial Guaranty dated August 23, 2021 at Exhibit 13, was in full force and effect and unrevoked at the time Note 4363/9021 went into default.

**Loan 614364**

[¶ 40] Loan No. 614364 is a note that renewed and consolidated Loan Nos. 100327, 509422, 610932, and 512448.

[¶ 41] On December 23, 2020, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 100327 with First Western ("Note 0327") for the principal amount of $118,050.00 with an original interest rate of 4.500%. A true and correct copy of Note 0327 is attached as Exhibit 16.

[¶ 42] As a condition of making Loan No. 100327, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 43] On December 23, 2020, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC for Loan No. 100327.

[¶ 44] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 17.

[¶ 45] On December 28, 2021, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 509422 with First Western ("Note 9422") for the principal amount of $118,050.00 with an original interest rate of 4.500%. A true and correct copy of Note 9422 is attached as Exhibit 18.

[¶ 46] As a condition of making Loan No. 509422, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 47] On December 28, 2021, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC, LLC for Loan No. 509422.

[¶ 48] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 19.

[¶ 49] On November 23, 2022, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 610932 with First

Western ("Note 0932") for the principal amount of $260,000.00 with an original interest rate of 7.000%. A true and correct copy of Note 0932 is attached as Exhibit 20.

[¶ 50] As a condition of making Loan No. 610932, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 51] On November 23, 2022, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC for Loan No. 610932.

[¶ 52] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 21.

[¶ 53] On October 4, 2023, The Kidney & Hypertension Center PLC executed a Change in Terms Agreement in which the maturity date of Note 0932 was extended to November 14, 2024 and the interest rate fixed at 8.250%. A true and correct copy of the Change in Terms Agreement dated November 23, 2022 is attached as Exhibit 22.

[¶ 54] On September 28, 2023, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 512448 with First Western ("Note 2448") for the principal amount of $850,000.00 with an original interest rate of 10.000%. A true and correct copy of Note 2448 is attached as Exhibit 23.

[¶ 55] As a condition of making Loan No. 512448, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 56] On September 28, 2023, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC for Loan No. 512448.

[¶ 57] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 24.

[¶ 58] On December 31, 2024, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan NO. 614364 with First Western ("Note 4364") to renew and consolidate Notes 6327, 9422, 0932, and 2448, with the renewed and consolidated principal amount being $1,189,188.04 at an initial interest rate of 7.500%. Payments under Note 4364 were due and payable as follows: 12 monthly payments in the initial amount of $11,401.16 beginning on June 9, 2025, with a final payment of all remaining principal and interest due on June 9, 2026. A true and correct copy of Note 4364 is attached as Exhibit 25.

[¶ 59] Note 4364 is in default, as The Kidney & Hypertension Center PLC has failed to make payments when payments were due by failing to make the payment due on August 9, 2025, and failing to make all subsequent payments as they have become due.

[¶ 60] Note 4364 is further in default due to the mortgagor's failure to pay real estate taxes on the mortgaged property serving as security for Note 4364.

[¶ 61] That the Commercial Guaranties dated December 23, 2020, December 28, 2021, November 23, 2022 and September 28, 2023 at Exhibits 17, 19, 21 and 24 were in full force and effect and unrevoked at the time Note 4364 went into default.

**Loan 51436599**

[¶ 62] On December 31, 2024, The Kidney & Hypertension Center PLC, by and through Khaled Rabadi, its managing member, entered into a Promissory Note for Loan No. 51436599 with First Western ("Note 6599") in the principal amount of $468,629.98 at an initial interest rate of 0.000%. Payments under Note 6599 were due and payable as follows: 1 regular payment of $15,621.00 on December 1, 2026 and one final payment on December 1, 2027 in the amount of $453,008.98. A true and correct copy of Note 6599 is attached as Exhibit 26.

[¶ 63] As a condition of making Loan No. 51436599, to The Kidney & Hypertension Center PLC, the First Western required a Commercial Guaranty to be executed and delivered by Khaled Rabadi.

[¶ 64] On December 31, 2024, Kahled Rabadi, executed a Commercial Guaranty giving an absolute and unconditional guaranty for the full and punctual payment and satisfaction of the indebtedness owed to the First Western by The Kidney & Hypertension Center PLC for Loan No. 51436599.

[¶ 65] A true and correct copy of the Commercial Guaranty executed by Khaled Rabadi is attached here to as Exhibit 27.

[¶ 66] Note 6599 is in default due under the terms of Note 6599 and the mortgage and security agreement, as follows:

a. Other Defaults in which The Kidney & Hypertension Center PLC has defaulted on other loans;

b. Failure to pay real estate taxes, allowing real estate taxes for 2023, 2024, and 2025 to become delinquent.

[¶ 67] That the Commercial Guaranty dated December 31, 2024 at Exhibit 27, was in full force and effect and unrevoked at the time Note 6599 went into default.

[¶ 68] That as of August 31, 2026, the amount due on the loans is set forth below:

| | | | Principal | Acrueed Intere | Late Fees | Total | Per diem from 8/31/2 |
|---|---|---|---|---|---|---|---|
| Loan No. | | 614360 | $ 3,559,645.83 | $ 430,196.55 | $ 13,000.00 | **$ 4,002,842.38** | $ 741.59 |
| Borrower | KDJ Investment Group, LLC | | | | | | |
| Loan No. | | 1600301 | $ 343,313.49 | $ 9,499.49 | $ 100.00 | **$ 352,912.98** | $ 38.15 |
| Borrower | KDJ Properties, LLC | | | | | | |
| Loan No. | | 614359 | $ 720,762.34 | $ 78,537.86 | $ 4,488.25 | **$ 803,788.45** | $ 150.16 |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |
| Loan No. | | 509021 | $ 996,882.00 | $ 127,725.51 | $ 6,736.66 | **$ 1,131,344.17** | $ 207.68 |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |
| Loan No. | | 614364 | $ 1,189,188.04 | $ 129,562.39 | $ 16,197.68 | **$ 1,334,948.11** | $ 247.75 |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |
| Loan No. | | 51436599 | $ 468,629.98 | | | **$ 468,629.98** | |
| Borrower | The Kidney and Hypertension Center PLC | | | | | | |

[¶ 69] True and correct copies of histories for the loans are attached as Exhibits 28, 29, 30, 31, 32, and 33.

[¶ 70] That First Western is the owner and holder of the Notes, Loans and Commercial Guaranty agreements as set forth above.

[¶ 71] That First Western has accelerated the amount due on the Notes and Loans as set for the above.

[¶ 72] That prior to commencement of this action, real estate taxes 2023 and 2024 for the mortgaged property as set forth herein were unpaid and delinquent.

[¶ 73] True and correct copies of the real estate tax records found on Grand Forks County's GIS Property & Document Searches website: https://www.gfcounty.nd.gov/our-county/property-taxes/gis-property-document-searches are attached as Exhibits 34 and 35.

[¶ 74] Further affiant sayeth not.

Dated this 1st day of October, 2026.

Gerald A. Brossart

STATE OF NORTH DAKOTA )
) ss
COUNTY OF Cass )

On this 1st day of October, 2026, before me, a Notary Public in and for said county and state, personally appeared Gerald A. Brossart, known to me to be the person who is described in and who executed the foregoing instrument and acknowledged to me that he executed the same in his capacity as Loan Officer at First Western Bank & Trust.

RICKY GRIMM
Notary Public
State of North Dakota
My Commission Expires Dec. 10, 2028

Notary Public
For the State of North Dakota

Exhibit 1
Case No. 18-2026-CV-00864

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $5,213,138.00 | 08-14-2020 | 02-15-2022 | 1600091 | 9100 | 0000051127-01 | JH/764 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KDJ Investment Group LLC
645 Beacon Cir
Grand Forks, ND 58201

**Lender:** BlackRidgeBANK
West Fargo Branch
855 28th Avenue East
West Fargo, ND 58078
(701) 551-1320

**Principal Amount: $5,213,138.00** **Date of Note: August 14, 2020**

**PROMISE TO PAY.** KDJ Investment Group LLC ("Borrower") promises to pay to BlackRidgeBANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Million Two Hundred Thirteen Thousand One Hundred Thirty-eight & 00/100 Dollars ($5,213,138.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on February 15, 2022. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 15, 2020, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BlackRidgeBANK, West Fargo Branch, 855 28th Avenue East West Fargo, ND 58078.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest

immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cass County, State of North Dakota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Construction Mortgage dated August 14, 2020, to Lender on real property located in Grand Forks County, State of North Dakota.

(B) an Assignment of All Rents to Lender on real property located in Grand Forks County, State of North Dakota.

(C) a Commercial Security Agreement dated August 14, 2020 made and executed between KDJ Investment Group LLC and Lender on collateral described as: inventory, chattel paper, accounts, equipment, general intangibles and fixtures.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Khaled Rabadi, Owner of KDJ Investment Group LLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: BlackRidgeBANK, West Fargo Branch, 855 26th Avenue East, West Fargo, ND 58078.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KDJ INVESTMENT GROUP LLC**

By: ______________________
Khaled Rabadi, Owner of KDJ Investment Group LLC

LaserPro, Ver. 20.2.0.043 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - ND c:\loanprocessing\CFI\LPL\D20.FC TR-23838 PR-48

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | KDJ Investment Group LLC<br>645 Beacon Cir<br>Grand Forks, ND 58201 | **Lender:** | BlackRidgeBANK<br>West Fargo Branch<br>855 26th Avenue East<br>West Fargo, ND 58078<br>(701) 551-1320 |
| **Guarantor:** | Khaled Rabadi<br>645 Beacon Cir<br>Grand Forks, ND 58201 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty;

(D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**ADDITIONAL FINANCIAL STATEMENT REQUIREMENTS.** Guarantor agrees to provide Lender with any final and/or amended Schedule K-1(s) prepared by any partnership, corporation, estate or trust annually, together with the Guarantor's Federal tax returns, used to report Guarantor's Share of Income, Deductions, Credits, etc. as a Partner, Shareholder, or Beneficiary of such partnership, corporation, estate or trust.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor in form satisfactory to Lender.

**Tax Returns.** As soon as available after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** **This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cass County, State of North Dakota.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** **Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means KDJ Investment Group LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Khaled Rabadi, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BlackRidgeBANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 14, 2020.**

GUARANTOR:

X ______________________________
Khaled Rabadi

LaserPro, Ver. 20.2.0.043 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - ND c:\locimprocessing\CFI\LPL\E20.FC TR-23838 PR-28

FIRST WESTERN BANK & TRUST

1619685
Page: 1 of 10
1/19/2021 8:00 AM
CFTMG $65.00

# ARTICLES OF MERGER
# OF
# FIRST WESTERN BANK & TRUST
# AND
# BLACKRIDGEBANK

Pursuant to Sections 6-03-11 and 10-19.1-99 of the North Dakota Century Code, the undersigned entities adopt the following Articles of Merger:

1. The Plan of Merger attached as Exhibit A, prescribes the details of the merger of BLACKRIDGEBANK, a North Dakota state-chartered commercial bank, with and into FIRST WESTERN BANK & TRUST, a North Dakota state-chartered commercial bank, pursuant to and in accordance with Section 6-03-11 of the North Dakota Century Code. According to the Plan of Merger, which has been unanimously approved by each of the Board of Directors of FIRST WESTERN BANK & TRUST and BLACKRIDGEBANK, FIRST WESTERN BANK & TRUST shall be the surviving organization. After the effective time, FIRST WESTERN BANK & TRUST shall continue as a North Dakota state-chartered commercial bank.

2. Each of FIRST WESTERN BANK & TRUST and BLACKRIDGEBANK are wholly-owned subsidiaries of WESTBRAND, INC., a North Dakota business corporation. WESTBRAND, INC., as the sole shareholder of each of FIRST WESTERN BANK & TRUST and BLACKRIDGEBANK, has voted 100% of the respective shares of each bank owned by WESTBRAND, INC. in favor of the Plan of Merger and related merger transaction.

3. The effective time of the merger of BLACKRIDGEBANK with and into FIRST WESTERN BANK & TRUST shall be 7:00 p.m. Central Standard Time on Friday, November 13, 2020.

IN WITNESS WHEREOF, the parties hereto have executed these Articles of Merger effective as of November 2, 2020.

FIRST WESTERN BANK & TRUST

By: *Brenda K Foster*
Brenda K. Foster
Chairman, President & Chief Executive Officer

BLACKRIDGEBANK

By *Brenda K Foster*
Brenda K. Foster
Chairman & Chief Executive Officer

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,061,128.00 | 04-20-2022 | 05-15-2023 | 1600091 | 1A(2) / 201 | KAA4640 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** KDJ INVESTMENT GROUP LLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $6,061,128.00** **Date of Note: April 20, 2022**

**PROMISE TO PAY.** KDJ INVESTMENT GROUP LLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million Sixty-one Thousand One Hundred Twenty-eight & 00/100 Dollars ($6,061,128.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 15, 2023. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 15, 2022, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage to Lender on real property located in GRAND FORKS County, State of North Dakota, as described and modified in the Modification of Mortgage dated April 20, 2022.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **KHALED RABADI, Owner of KDJ INVESTMENT GROUP LLC.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KDJ INVESTMENT GROUP LLC**

By: Khaled Rabadi
KhaledRabadi (Apr 25, 2022 15:55 CDT) Apr 25, 2022
**KHALED RABADI, Owner of KDJ INVESTMENT GROUP LLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Jace Holm
Jace Holm (Apr 20, 2022 10:47 CDT) Apr 20, 2022
**JACE HOLM, BUSINESS BANKING OFFICER**

Case No. 18-2026-CV-00864 Exhibit 5

# PROMISSORY NOTE

ORIGINAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,177,503.00 | 11-23-2022 | 10-15-2023 | 1600001 | 1A(2) / 201 | KAA4640 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KDJ INVESTMENT GROUP LLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
885 26TH AVE EAST
WEST FARGO, ND 58078

PAID 10\13\23

**Principal Amount: $6,177,503.00** **Date of Note: November 23, 2022**

**PROMISE TO PAY.** KDJ INVESTMENT GROUP LLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million One Hundred Seventy-seven Thousand Five Hundred Three & 00/100 Dollars ($6,177,503.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.750%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 15, 2023. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 15, 2022, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage to Lender on real property located in GRAND FORKS County, State of North Dakota, as described and modified in the Modification of Mortgage dated November 23, 2022.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **KHALED RABADI, OWNER of KDJ INVESTMENT GROUP LLC.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KDJ INVESTMENT GROUP LLC**

By: ______________________________
**KHALED RABADI, OWNER of KDJ INVESTMENT GROUP LLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X ______________________________
**JACE HOLM, BUSINESS BANKING OFFICER**

LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - ND L:\CFI\LPL\D20.FC TR-9980 PR-2

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,559,545.83 | 12-24-2024 | 10-15-2033 | 614360 | 1E(1) / 201 | KAA4640 | GAB | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KDJ INVESTMENT GROUP LLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $3,559,645.83** **Date of Note: December 24, 2024**

**PROMISE TO PAY.** KDJ INVESTMENT GROUP LLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Five Hundred Fifty-nine Thousand Six Hundred Forty-five & 83/100 Dollars ($3,559,645.83), together with interest on the unpaid principal balance from December 24, 2024, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 65 monthly consecutive principal and interest payments in the initial amount of $25,883.06 each, beginning June 15, 2025, with subsequent payments due the same day each month after that, and with interest calculated on the unpaid principal balances using an interest rate of 7.500%; 35 monthly consecutive principal and interest payments in the initial estimated amount of $25,883.06 each, beginning November 15, 2030, with subsequent payments due the same day each month after that, and with interest calculated on the unpaid principal balances using an interest rate based on the 5 YEAR FEDERAL HOME LOAN ADVANCE RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.001 (currently 3.737%), plus a margin of 3.500 percentage points, resulting in an initial interest rate of 7.770%; and one principal and interest payment of $3,329,083.00 on October 15, 2033, with interest calculated on the unpaid principal balances using an interest rate based on the 5 YEAR FEDERAL HOME LOAN ADVANCE RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.001 (currently 3.737%), plus a margin of 3.500 percentage points, resulting in an initial interest rate of 7.770%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 5 YEAR FEDERAL HOME LOAN ADVANCE RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.001 (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If Lender determines, in its sole discretion, that the Index for this Note has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust any margin corresponding to the Index being substituted to accompany the substitute index. Margins corresponding to the Index are described in the "Payments" section. The change to the margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each five years (5). Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.737% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever changes occur in the interest rate, Lender, at its option, may do one or more of the following: (A) change the amounts of Borrower's payments to maintain the original amortization schedule, (B) increase Borrower's payments to cover accruing interest if the interest rate adjustment is an increase, (C) change the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and change Borrower's final payment amount.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage given by KDJ Properties LLC, dated December 23, 2020, to Lender and filed for record January 12, 2021 as Document No. 809848 on real property described as "Real Property located 645 Beacon Circle, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(B) a Mortgage given by KDJ Properties LLC, dated November 23, 2022, to Lender and filed for record November 23, 2022, as Document No. 830456 on real property described as "Real Property located 645 Beacon Circle, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(C) a Construction Mortgage given by KDJ Investment Group LLC, dated August 14, 2020, to Lender and filed for record August 17, 2020, as Document No. 804541 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(D) a Financing Statement for Real Estate and UCC Filing/UCC-1A by and KDJ Investment Group, LLC and Lender, filed for record on December 12, 2023, as Document No. 837797 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(E) a Mortgage given by KDJ Investment Group LLC, dated September 28, 2023, to Lender and filed for record January 25, 2024, as Document No. 838508 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(F) a Commercial Security Agreement dated December 9, 2024 made and executed between KIDNEY AND HYPERTENSION CENTER PLC and Lender on collateral described as:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KDJ INVESTMENT GROUP LLC**

By: KhaledRabadi
KhaledRabadi (Dec 31, 2024 13:17 CST) Dec 31, 2024
**KHALED RABADI, Managing Member of KDJ INVESTMENT GROUP LLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Gerald Brossart
Gerald Brossart (Jan 2, 2025 13:30 CST) Jan 2, 2025
**GERALD BROSSART, FARGO MARKET PRESIDENT**

LaserPro, Ver. 24.4.20.030 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - ND L:\CFI\LPL\D20.FC TR-14503 PR-2

DocuSign Envelope ID: 67479CDB-420B-4A9D-966A-AE6210A7DEC

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $386,000.00 | 12-23-2020 | 12-25-2025 | 1600301 | 1C(2)(A) / 201 | LAA4779 | 738/GB | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** KDJ PROPERTIES, LLC
1451 44TH AVE S #112D
GRAND FORKS, ND 58201

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
825 26TH AVE EAST
WEST FARGO, ND 58078

---

**Principal Amount: $386,000.00** **Date of Note: December 23, 2020**

**PROMISE TO PAY.** KDJ PROPERTIES, LLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Eighty-six Thousand & 00/100 Dollars ($386,000.00), together with interest on the unpaid principal balance from December 23, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $1,950.00 each and one irregular last payment estimated at $345,240.69. Borrower's first payment is due January 25, 2021, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 25, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated December 23, 2020, to Lender on real property located in GRAND FORKS County, State of North Dakota.

DocuSign Envelope ID: 6747910DB-4203-4A0D-960A-BE6221DA7DEC



**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KDJ PROPERTIES, LLC**

By: Khaled Rabadi
KHALED RABADI, Manager/Governor of KDJ PROPERTIES, LLC

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Gerald Brossart
GERALD BROSSART, SVP COMMERCIAL BANKING MANAGER

EXHIBIT 8

DocuSign Envelope ID: 67479CD9-4200-4A0D-900 32210A7DEC

# COMMERCIAL GUARANTY

**Borrower:** KDJ PROPERTIES, LLC
1401 44TH AVE S #112D
GRAND FORKS, ND 58201

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
025 26TH AVE EAST
WEST FARGO, ND 58078

**Guarantor:** KHALED RABADI
645 BEACON CIR
GRAND FORKS, ND 58201

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Annual Statements. As soon as available after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor in form satisfactory to Lender.

Tax Returns. As soon as available after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

# COMMERCIAL GUARANTY (Continued)



All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** **This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other

# COMMERCIAL GUARANTY
## (Continued)



right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means KDJ PROPERTIES, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 23, 2020.**

**GUARANTOR:**

X Khaled Rabadi
KHALED RABADI

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $805,343.00 | 08-09-2022 | 08-05-2027 | 510514 | 4(A) / 403 | PAA3645 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE KIDNEY & HYPERTENSION CENTER PLC
5750 S. WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $805,343.00** **Date of Note: August 9, 2022**

**PROMISE TO PAY.** THE KIDNEY & HYPERTENSION CENTER PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Five Thousand Three Hundred Forty-three & 00/100 Dollars ($805,343.00), together with interest on the unpaid principal balance from August 9, 2022, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $8,366.69 each and one irregular last payment estimated at $456,460.75. Borrower's first payment is due September 5, 2022, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 5, 2027, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 120 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S. WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated August 9, 2022 made and executed between THE KIDNEY & HYPERTENSION CENTER PLC and Lender on collateral described as:

MAGNETOM ALTEA - MRI (SN 189893); MULTIX IMPACT - XRAY (SN 31119); MAMMOMAT REVELATION - MAMMOGRAPHY (SN

20020); SOMATOM GO.ALL - CT SCAN (SN 117858)

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER PLC**

By: Khaledrabadi
Khaledrabadi (Aug 10, 2022 12:58 CDT) Aug 10, 2022
**KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Jace Holm
Jace Holm (Aug 10, 2022 12:59 CDT) Aug 10, 2022
**JACE HOLM, BUSINESS BANKING OFFICER**

# COMMERCIAL GUARANTY

**Borrower:** THE KIDNEY & HYPERTENSION CENTER PLC
5750 S. WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
850 26TH AVE EAST
WEST FARGO, ND 58078

**Guarantor:** KHALED RABADI
645 BEACON CIR
GRAND FORKS, ND 58201-0000

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than sixty (60) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a professional accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, or other comprehensive basis of accounting acceptable to Lender and designated by Lender in writing, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** **This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5760 S. WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

# COMMERCIAL GUARANTY
## (Continued)



**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE KIDNEY & HYPERTENSION CENTER PLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 9, 2022.**

**GUARANTOR:**

Khaledrabadi

X Khaledrabadi (Aug 10, 2022 12:58 CDT) Aug 10, 2022

KHALED RABADI

LaserPro, Ver. 22.2.10.016 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - ND LACFI\LPL\E20.FC TR-8184 PR-1

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $720,762.34 | 12-24-2024 | 08-05-2032 | 614359 | 4(A) / 403 | PAA3645 | GAB | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KIDNEY AND HYPERTENSION CENTER PLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
655 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $720,762.34** **Date of Note: December 24, 2024**

**PROMISE TO PAY.** KIDNEY AND HYPERTENSION CENTER PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Twenty Thousand Seven Hundred Sixty-two & 34/100 Dollars ($720,762.34), together with interest on the unpaid principal balance from December 24, 2024, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 86 regular payments of $6,904.90 each and one irregular last payment estimated at $490,983.59. Borrower's first payment is due June 5, 2025, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 5, 2032, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 180 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage given by KDJ Properties LLC, dated December 23, 2020, to Lender and filed for record January 12, 2021 as Document No. 809848 on real property described as "Real Property located 645 Beacon Circle,

Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(B) a Mortgage given by KDJ Properties LLC, dated November 23, 2022, to Lender and filed for record November 23, 2022, as Document No. 830456 on real property described as "Real Property located 645 Beacon Circle, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(C) a Construction Mortgage given by KDJ Investment Group LLC, dated August 14, 2020, to Lender and filed for record August 17, 2020, as Document No. 804541 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(D) a Financing Statement for Real Estate and UCC Filing/UCC-1A by and KDJ Investment Group, LLC and Lender, filed for record on December 12, 2023, as Document No. 837797 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(E) a Mortgage given by KDJ Investment Group LLC, dated September 28, 2023, to Lender and filed for record January 25, 2024, as Document No. 838508 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(F) a Commercial Security Agreement dated December 9, 2024 made and executed between KIDNEY AND HYPERTENSION CENTER PLC and Lender on collateral described as:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KIDNEY AND HYPERTENSION CENTER PLC**

By: KhaledRabadi KhaledRabadi (Dec 31, 2024 13:17 CST) Dec 31, 2024
**KHALED RABADI, MANAGING MEMBER of KIDNEY AND HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Gerald Brossart Gerald Brossart (Jan 2, 2025 13:30 CST) Jan 2, 2025
**GERALD BROSSART, FARGO MARKET PRESIDENT**

# PROMISSORY NOTE

LOC 4.5% Type 88

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 08-16-2021 | 08-15-2026 | 509021 | 4(A) / 403 | PAA3645 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE KIDNEY & HYPERTENSION CENTER, PLC
1451 44TH AVE S #112D
GRAND FORKS, ND 58201-3434

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
826 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $1,000,000.00** **Date of Note: August 16, 2021**

**PROMISE TO PAY.** THE KIDNEY & HYPERTENSION CENTER, PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 18 monthly consecutive interest payments beginning September 15, 2021, with interest calculated on the unpaid principal balances using an interest rate of 4.500%; 41 monthly consecutive principal and interest payments of $25,603.82 each, beginning March 15, 2023, with interest calculated on the unpaid principal balances using an interest rate of 4.500%; and one principal and interest payment of $25,604.00 on August 15, 2026, with interest calculated on the unpaid principal balances using an interest rate of 4.500%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower
prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

# PROMISSORY NOTE
## (Continued)



**WHEN FEDERAL LAW APPLIES.** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201-3434.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated August 16, 2021 made and executed between THE KIDNEY & HYPERTENSION CENTER, PLC and Lender on collateral described as:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER, PLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ADDITIONAL PROVISION.** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligations, defeat any claim of SBA, or preempt federal law.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER, PLC**

By: Khaled Rabadi
Khaled Rabadi (Aug 17, 2021 07:27 CDT) Aug 17, 2021
KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER, PLC

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Jace Holm
Jace Holm (Aug 16, 2021 16:18 CDT) Aug 16, 2021
JACE HOLM, BUSINESS BANKING OFFICER

LaserPro, Ver. 21.1.0.232 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - ND L:\CFI\LPL\D20.FC TR-8147 PR-11

[redacted]

# COMMERCIAL GUARANTY

**Borrower:** THE KIDNEY & HYPERTENSION CENTER, PLC
1451 44TH AVE S #112D
GRAND FORKS, ND 58201-3434

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
825 25TH AVE EAST
WEST FARGO, ND 58078

**Guarantor:** KHALED RABADI
645 BEACON CIR
GRAND FORKS, ND 58201-0000

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than sixty (60) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Federal Law.** When SBA is the holder, the Note and this Guaranty will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guaranty, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1461 44TH AVE S #112D, GRAND FORKS, ND 58201-3434.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender

to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**ADDITIONAL PROVISION.** When SBA is the holder, the Note and this Guarantee will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE KIDNEY & HYPERTENSION CENTER, PLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 16, 2021.**

**GUARANTOR:**

X Khaled Rabadi (Aug 17, 2021 07:27 CDT) Aug 17, 2021
KHALED RABADI

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 08-16-2021 | 08-15-2031 | 509021 | 4(A) / 403 | PAA3645 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE KIDNEY & HYPERTENSION CENTER, PLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $1,000,000.00** **Date of Agreement: September 28, 2023**

**DESCRIPTION OF CHANGE IN TERMS.**

**BY ENTERING INTO THIS AGREEMENT, THE TERMS ARE REVISED AS FOLLOWS:**

THE MATURITY DATE OF AUGUST 15, 2026 IS HEREBY EXTENDED TO AUGUST 15, 2031

THE INTEREST RATE SHALL BE 8.250% FIXED

**ADDITIONAL TERMS.** ACCRUED INTEREST SHALL BE PAID CURRENT UPON SIGNING OF THIS AGREEMENT.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 33 monthly consecutive interest payments, beginning November 15, 2023, with interest calculated on the unpaid principal balances using an interest rate of 8.250%; 60 monthly consecutive principal and interest payments of $20,124.43 each, beginning August 15, 2026, with interest calculated on the unpaid principal balances using an interest rate of 8.250%; and one principal and interest payment of $24,889.29 on August 15, 2031, with interest calculated on the unpaid principal balances using an interest rate of 8.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER, PLC**

By: KhaledRabadi
KhaledRabadi (Oct 4, 2023 10:52 CDT) Oct 4, 2023
**KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER, PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Jace Holm
Jace Holm (Oct 4, 2023 10:57 CDT) Oct 4, 2023
**JACE HOLM, BUSINESS BANKING OFFICER**

LaserPro, Ver. 23.3.0.027 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - ND L:\CFI\LPL\D20C.FC TR-8147 PR-11

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $996,882.00 | 12-24-2024 | 08-15-2031 | 614363 | 4(A) / 403 | PAA3645 | GAB | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** KIDNEY AND HYPERTENSION CENTER PLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $996,882.00** **Date of Note: December 24, 2024**

**PROMISE TO PAY.** KIDNEY AND HYPERTENSION CENTER PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Ninety-six Thousand Eight Hundred Eighty-two & 00/100 Dollars ($996,882.00), together with interest on the unpaid principal balance from December 24, 2024, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.600%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 73 regular payments of $9,623.76 each and one irregular last payment estimated at $750,849.91. Borrower's first payment is due July 15, 2025, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 15, 2031, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 180 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage given by KDJ Properties LLC, dated December 23, 2020, to Lender and filed for record January 12, 2021 as Document No. 809848 on real property described as "Real Property located 845 Beacon Circle, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.

(B) a Mortgage given by KDJ Properties LLC, dated November 23, 2022, to Lender and filed for record November 23, 2022, as Document No. 830456 on real property described as "Real Property located 645 Beacon Circle, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(C) a Construction Mortgage given by KDJ Investment Group LLC, dated August 14, 2020, to Lender and filed for record August 17, 2020, as Document No. 804541 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(D) a Financing Statement for Real Estate and UCC Filing/UCC-1A by and KDJ Investment Group, LLC and Lender, filed for record on December 12, 2023, as Document No. 837797 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(E) a Mortgage given by KDJ Investment Group LLC, dated September 28, 2023, to Lender and filed for record January 25, 2024, as Document No. 838508 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(F) a Commercial Security Agreement dated December 9, 2024 made and executed between KIDNEY AND HYPERTENSION CENTER PLC and Lender on collateral described as:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**ADDITIONAL PROVISION.** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligations, defeat any claim of SBA, or preempt federal law.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KIDNEY AND HYPERTENSION CENTER PLC**

By: KhaledRabadi
KhaledRabadi (Dec 31, 2024 13:17 CST) Dec 31, 2024
**KHALED RABADI, MANAGING MEMBER of KIDNEY AND HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Gerald Brossart
Gerald Brossart (Jan 2, 2025 13:30 CST) Jan 2, 2025
**GERALD BROSSART, FARGO MARKET PRESIDENT**

DocuSign Envelope ID: F6DCCA98-3590-4B79-87B1-04E261EEC2F2

ORIGINAL

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $118,050.00 | 12-23-2020 | 09-25-2024 | 1600327 | 4(A) / 403 | PAA3645 | 764/JH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE KIDNEY & HYPERTENSION CENTER, PLC
1451 44TH AVE S #112D
GRAND FORKS, ND 58201

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
825 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $118,050.00** **Date of Note: December 23, 2020**

**PROMISE TO PAY.** THE KIDNEY & HYPERTENSION CENTER, PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Eighteen Thousand Fifty & 00/100 Dollars ($118,050.00), together with interest on the unpaid principal balance from December 23, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 44 regular payments of $2,655.00 each and one irregular last payment estimated at $3,090.27. Borrower's first payment is due January 25, 2021, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 25, 2024, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated December 23, 2020 made and executed between THE KIDNEY & HYPERTENSION CENTER,

DocuSign Envelope ID: F6DCCA98-3690-4B79-87B1-04E281EE02F2



PLC and Lender on collateral described as:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER, PLC**

By: *Khaled Rabadi*
**KHALED RABADI, Member of THE KIDNEY & HYPERTENSION CENTER, PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X *Jace Holm*
**JACE HOLM, BUSINESS BANKING OFFICER**

LaserPro, Ver. 20.2.20.003 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - ND L:\LASERPRO\CFI\LPL\D20.FC TR-3253 PR-2

DocuSign Envelope ID: P6DCCA98-3690-4B70-87B1-...81EEC2F2

# COMMERCIAL GUARANTY

**Borrower:** THE KIDNEY & HYPERTENSION CENTER, PLC
1451 44TH AVE S #112D
GRAND FORKS, ND 58201

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
825 26TH AVE EAST
WEST FARGO, ND 58078

**Guarantor:** KHALED RABADI
645 BEACON CIR
GRAND FORKS, ND 58201

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Annual Statements. As soon as available after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor in form satisfactory to Lender.

Tax Returns. As soon as available after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

# COMMERCIAL GUARANTY
## (Continued)



All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other

# COMMERCIAL GUARANTY (Continued)



right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE KIDNEY & HYPERTENSION CENTER, PLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 23, 2020.**

**GUARANTOR:**

x Khaled Rabadi
KHALED RABADI

# PROMISSORY NOTE

AFT 22005990 LOC 4.5% Type 62

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $97,000.00 | 12-27-2021 | 06-30-2022 | 508422 | 4(A) / 401 | PAA3645 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE KIDNEY & HYPERTENSION CENTER, PLC
1451 44TH AVE S #112D
GRAND FORKS, ND 58201-3434

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
656 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $97,000.00** **Date of Note: December 27, 2021**

**PROMISE TO PAY.** THE KIDNEY & HYPERTENSION CENTER, PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety-seven Thousand & 00/100 Dollars ($97,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 30, 2022. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 30, 2022, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201-3434.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated December 27, 2021 made and executed between THE KIDNEY & HYPERTENSION CENTER, PLC and Lender on collateral described as:

Purchase Money Security Interest in DIM EXL 200 DOMESTIC (SN DR274083) and ABACUS 5 ANALYZER (SN 512000085)

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER, PLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER, PLC**

By: *Khaled Rabadi*
Khaled Rabadi (Dec 28, 2021 13:49 CST) Dec 28, 2021
KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER, PLC

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X *Jace Holm*
Jace Holm (Dec 24, 2021 09:41 CST) Dec 24, 2021
JACE HOLM, BUSINESS BANKING OFFICER

LaserPro, Ver. 21.4.0.034 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - ND LGCFL\PLD20.FC TR-7165 PR-1

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | THE KIDNEY & HYPERTENSION CENTER, PLC<br>1461 44TH AVE S #112D<br>GRAND FORKS, ND 58201-3434 | **Lender:** | FIRST WESTERN BANK & TRUST<br>WEST FARGO BRANCH<br>666 26TH AVE EAST<br>WEST FARGO, ND 58078 |
| **Guarantor:** | KHALED RABADI<br>646 BEACON CIR<br>GRAND FORKS, ND 58201-0000 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

Annual Statements. As soon as available, but in no event later than sixty (60) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

Tax Returns. As soon as available, but in no event later than sixty (60) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 1451 44TH AVE S #112D, GRAND FORKS, ND 58201-3434.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and

signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE KIDNEY & HYPERTENSION CENTER, PLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 27, 2021.**

**GUARANTOR:**

X Khaled Rabadi
Khaled Rabadi (Dec 28, 2021 13:46 CST) Dec 28, 2021
KHALED RABADI

LaserPro, Ver. 21.4.0.034 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - ND LACFI\LPL\E20.FC TR-3165 PR-4

Case No. 18-2026-CV-00864

Exhibit 20

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $260,000.00 | 11-23-2022 | 11-15-2023 | 610932 | 1C(2)(B) / 201 | PAA3645 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE KIDNEY & HYPERTENSION CENTER PLC
5750 S. WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $260,000.00** **Date of Note: November 23, 2022**

**PROMISE TO PAY.** THE KIDNEY & HYPERTENSION CENTER PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Sixty Thousand & 00/100 Dollars ($260,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.000%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on November 15, 2023. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 15, 2022, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S. WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated November 23, 2022, to Lender on real property located in GRAND FORKS County, State of North Dakota.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled

to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER PLC.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER PLC**

**By:** ______________________________
**KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

**X** ______________________________
**JACE HOLM, BUSINESS BANKING OFFICER**

LaserPro, Ver. 22.4.0.036 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - ND L:\CFI\LPL\D20.FC TR-9851 PR-2

Case No. 18-2026-CV-00864
Exhibit 21

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | THE KIDNEY & HYPERTENSION CENTER PLC<br>5750 S. WASHINGTON ST<br>GRAND FORKS, ND 58201-7893 | **Lender:** | FIRST WESTERN BANK & TRUST<br>WEST FARGO BRANCH<br>606 26TH AVE EAST<br>WEST FARGO, ND 58078 |
| **Guarantor:** | KHALED RABADI<br>546 BEACON CIR<br>GRAND FORKS, ND 58201-0000 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

> **Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.
>
> **Tax Returns.** As soon as available, but in no event later than ninety (90) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a professional accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, or other comprehensive basis of accounting acceptable to Lender and designated by Lender in writing, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S. WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

# COMMERCIAL GUARANTY
## (Continued)



**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE KIDNEY & HYPERTENSION CENTER PLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 23, 2022.**

**GUARANTOR:**

X ______________________________
KHALED RABADI

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $260,000.00 | 11-23-2022 | 11-15-2024 | 610932 | 1C(2)(B) / 201 | PAA3645 | JMH | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** THE KIDNEY & HYPERTENSION CENTER PLC
5750 S. WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $260,000.00** **Date of Agreement: 10/04/2023**

**DESCRIPTION OF CHANGE IN TERMS.**

THE LINE OF CREDIT NEW EXPIRATION DATE IS 11/15/2024.

THE INTEREST RATE SHALL BE 8.25% FIXED.

**ADDITIONAL TERMS.** ALL ACCRUED INTEREST SHALL BE PAID CURRENT UPON SIGNING OF THIS AGREEMENT.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**THE KIDNEY & HYPERTENSION CENTER PLC**

By: KhaledRabadi
KhaledRabadi (Oct 4, 2023 10:52 CDT) Oct 4, 2023
**KHALED RABADI, MANAGING MEMBER of THE KIDNEY & HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Jace Holm
Jace Holm (Oct 4, 2023 10:57 CDT) Oct 4, 2023
**JACE HOLM, BUSINESS BANKING OFFICER**

LaserPro, Ver. 23.3.0.027 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - ND L:\CFI\LPL\D20C.FC TR-9881 PR-2

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $850,000.00 | 09-28-2023 | 09-28-2028 | 512448 | 4(A) / 401 | PAA3645 | JMH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KIDNEY & HYPERTENSION CENTER PLC
5750 S. WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
900 SOUTH BROADWAY
PO BOX 1090
MINOT, ND 58701-1090

**Principal Amount: $850,000.00** **Date of Note: September 28, 2023**

**PROMISE TO PAY.** KIDNEY & HYPERTENSION CENTER PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Fifty Thousand & 00/100 Dollars ($850,000.00), together with interest on the unpaid principal balance from September 28, 2023, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 6 monthly consecutive interest payments, beginning October 28, 2023, with interest calculated on the unpaid principal balances using an interest rate of 10.000%; 53 monthly consecutive principal and interest payments of $11,642.44 each, beginning April 28, 2024, with interest calculated on the unpaid principal balances using an interest rate of 10.000%; and one principal and interest payment of $556,447.00 on September 28, 2028, with interest calculated on the unpaid principal balances using an interest rate of 10.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 20 days or more late, Borrower will be charged $50.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S. WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated September 28, 2023, to Lender on real property located in GRAND FORKS County, State of North Dakota.

(B) a Commercial Security Agreement dated September 28, 2023 made and executed between KIDNEY & HYPERTENSION CENTER PLC and Lender on collateral described as:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property. Magnetom Altea - MRI SERIAL#189893; Multix Impact - Xray SERIAL#31119; Mammomat Revelation - Mammography SERIAL#20020; Somatom Go.All - CT Scan SERIAL#117858

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KIDNEY & HYPERTENSION CENTER PLC**

By: Khaled Rabadi
KhaledRabadi (Sep 28, 2023 17:30 CDT) Sep 28, 2023
**KHALED RABADI, MANAGING MEMBER of KIDNEY & HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Jace Holm
Jace Holm (Sep 28, 2023 17:36 CDT) Sep 28, 2023
**JACE HOLM, AVP COMMERCIAL LENDER**

# COMMERCIAL GUARANTY

**Borrower:** KIDNEY & HYPERTENSION CENTER PLC
5750 S. WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
900 SOUTH BROADWAY
PO BOX 1090
MINOT, ND 58701-1890

**Guarantor:** KHALED RABADI
645 BEACON CIR
GRAND FORKS, ND 58201-0000

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to

Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, or other comprehensive basis of accounting acceptable to Lender and designated by Lender in writing, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** **This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 6750 S. WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender

to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means KIDNEY & HYPERTENSION CENTER PLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED SEPTEMBER 28, 2023.**

**GUARANTOR:**

X Khaled Rabadi
KhaledRabadi (Sep 28, 2023 17:30 CDT) Sep 28, 2023
KHALED RABADI

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,189,188.04 | 12-24-2024 | 06-09-2026 | 614364 | 4(A) / 201 | PAA3645 | GAB | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** KIDNEY AND HYPERTENSION CENTER PLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
855 26TH AVE EAST
WEST FARGO, ND 58078

---

**Principal Amount: $1,189,188.04** **Date of Note: December 24, 2024**

**PROMISE TO PAY.** KIDNEY AND HYPERTENSION CENTER PLC ("Borrower") promises to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million One Hundred Eighty-nine Thousand One Hundred Eighty-eight & 04/100 Dollars ($1,189,188.04), together with interest on the unpaid principal balance from December 24, 2024, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 12 regular payments of $11,401.16 each and one irregular last payment estimated at $1,184,003.02. Borrower's first payment is due June 9, 2025, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 9, 2026, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 180 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage given by KDJ Properties LLC, dated December 23, 2020, to Lender and filed for record January 12, 2021 as Document No. 809848 on real property described as "Real Property located 645 Beacon Circle,

Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(B) a Mortgage given by KDJ Properties LLC, dated November 23, 2022, to Lender and filed for record November 23, 2022, as Document No. 830456 on real property described as "Real Property located 645 Beacon Circle, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(C) a Construction Mortgage given by KDJ Investment Group LLC, dated August 14, 2020, to Lender and filed for record August 17, 2020, as Document No. 804541 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(D) a Financing Statement for Real Estate and UCC Filing/UCC-1A by and KDJ Investment Group, LLC and Lender, filed for record on December 12, 2023, as Document No. 837797 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(E) a Mortgage given by KDJ Investment Group LLC, dated September 28, 2023, to Lender and filed for record January 25, 2024, as Document No. 838508 on real property described as "Real Property located at 5750 South Washington Street, Grand Forks, ND 58201" and located in Grand Forks County, State of North Dakota.
(F) a Commercial Security Agreement dated December 9, 2024 made and executed between KIDNEY AND HYPERTENSION CENTER PLC and Lender on collateral described as:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.
(G) an Assignment of Purchaser's Contract Interest to Lender on real property described as "Real Property located at BARE LAND, GRAND FORKS, ND 58201" and located in GRAND FORKS County, State of North Dakota.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KIDNEY AND HYPERTENSION CENTER PLC**

By: KhaledRabadi
KhaledRabadi (Dec 31, 2024 13:17 CST) Dec 31, 2024
**KHALED RABADI, MANAGING MEMBER of KIDNEY AND HYPERTENSION CENTER PLC**

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Gerald Brossart
Gerald Brossart (Jan 2, 2025 13:30 CST) Jan 2, 2025
**GERALD BROSSART, FARGO MARKET PRESIDENT**

LaserPro, Ver. 24.4.20.030 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - ND L:\CFI\LPL\D20.FC TR-14531 PR-2

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $468,629.98 | 12-24-2024 | 12-01-2027 | 51436599 | 4(A) / 403 | PAA3645 | GAB | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KIDNEY AND HYPERTENSION CENTER PLC
KDJ INVESTMENT GROUP LLC
5750 S WASHINGTON ST
GRAND FORKS, ND 58201-7593

**Lender:** FIRST WESTERN BANK & TRUST
WEST FARGO BRANCH
865 26TH AVE EAST
WEST FARGO, ND 58078

**Principal Amount: $468,629.98** **Date of Note: December 24, 2024**

**PROMISE TO PAY.** KIDNEY AND HYPERTENSION CENTER PLC and KDJ INVESTMENT GROUP LLC ("Borrower") jointly and severally promise to pay to FIRST WESTERN BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Sixty-eight Thousand Six Hundred Twenty-nine & 98/100 Dollars ($468,629.98), together with interest on the unpaid principal balance from December 24, 2024, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 0.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 1 regular payments of $15,621.00 each and one irregular last payment estimated at $453,008.98. Borrower's first payment is due December 1, 2026, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on December 1, 2027, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 30 payment periods. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST WESTERN BANK & TRUST, 900 SOUTH BROADWAY MINOT, ND 58701.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage dated December 24, 2024, to Lender on real property located in GRAND FORKS County, State of North Dakota.

(B) a Commercial Security Agreement dated December 9, 2024 made and executed between KIDNEY AND HYPERTENSION CENTER PLC and Lender on collateral described as:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.
(C) an Assignment of Purchaser's Contract Interest to Lender on real property described as "Real Property located at BARE LAND, GRAND FORKS, ND 58201" and located in GRAND FORKS County, State of North Dakota.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FIRST WESTERN BANK & TRUST 900 SOUTH BROADWAY MINOT, ND 58701.

**FINANCIAL INFORMATION.** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**KIDNEY AND HYPERTENSION CENTER PLC**

By: KhaledRabadi
KhaledRabadi (Dec 31, 2024 11:41 CST) Dec 31, 2024
KHALED RABADI, MANAGING MEMBER of KIDNEY AND HYPERTENSION CENTER PLC

**KDJ INVESTMENT GROUP LLC**

By: KhaledRabadi
KhaledRabadi (Dec 31, 2024 11:41 CST) Dec 31, 2024
KHALED RABADI, Managing Member of KDJ INVESTMENT GROUP LLC

**LENDER:**

**FIRST WESTERN BANK & TRUST**

X Gerald Brossart
Gerald Brossart (Dec 26, 2024 15:41 CST) Dec 26, 2024
GERALD BROSSART, FARGO MARKET PRESIDENT

LaserPro, Ver. 24.4.20.030 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - ND c:\laserpro\CFI\LPL\D20.FC TR-14509 PR-2

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | KIDNEY AND HYPERTENSION CENTER PLC<br>KDJ INVESTMENT GROUP LLC<br>5760 S WASHINGTON ST<br>GRAND FORKS, ND 58201-7893 | **Lender:** | FIRST WESTERN BANK & TRUST<br>WEST FARGO BRANCH<br>866 26TH AVE EAST<br>WEST FARGO, ND 58078 |
| **Guarantor:** | KHALED RABADI<br>646 BEACON CIR<br>GRAND FORKS, ND 58201-0000 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, or any one or more of them, and any present or future judgments against Borrower, or any one or more of them, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER, OR ANY ONE OR MORE OF THEM, TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give

notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** **This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of North Dakota, in the county in which Borrower's following address is located: 5750 S WASHINGTON ST, GRAND FORKS, ND 58201-7593.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be

binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means KIDNEY AND HYPERTENSION CENTER PLC and KDJ INVESTMENT GROUP LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation KHALED RABADI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means FIRST WESTERN BANK & TRUST, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 24, 2024.**

**GUARANTOR:**

X KhaledRabadi
KhaledRabadi (Dec 31, 2024 11:41 CST) Dec 31, 2024
KHALED RABADI

Case No. 18-2026-CV-01864

Exhibit 28

**First Western Bank & Trust**
900 South Broadway
Minot, ND 58701-4658
701-852-3711

## LLC (COMPANY) Activity Statement

**KDJ INVESTMENT GROUP LLC**
5750 S WASHINGTON ST
GRAND FORKS ND 58201-7593

## General Information

| | | | |
|---|---|---|---|
| Account Number: | XXXXXXXXXXXX4360 | Customer Number: | KAA4640 |
| Home Phone: | | Work Phone: | (701)610-1026 |
| Loan Term: | 106 | Loan Type: | COMM REM 365/360 IB2 |
| Interest Rate: | 7.500000 % | Origination Date: | 12/24/2024 |
| | | Date Range: | 1/1/0001-12/31/9999 |

Loan Officer: GERALD BROSSART
Collateral: 201 - COMMERCIAL REAL ESTATE
Call Report: Sec by Non-farm Non-Residential Properties (Owner Occupied)
Loan Purpose: MEDICAL/DENTAL FACILITY

## Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $3,559,645.83 | Payment Due Date: | 07/15/2025 |
| Current Balance: | $3,559,645.83 | Payment Amount: | $0.00 |
| Accrued Interest: | $0.00 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $741.59288 | Payment Type: | Scheduled payment includes accrued int. |

## Loan History

| Posting Date | Transaction Description | | Amount | Principal Balance |
|---|---|---|---|---|
| 12/24/2024 | Interest Rate Change | 7.50000000 % | $0.00 | |
| 12/31/2024 | Effective Date Debit Interest Adj. | | $5,191.15 | |
| 12/31/2024 | Regular Principal Advance | | $3,559,645.83 | $3,559,645.83 |
| 06/18/2025 | Automatic Transfer from DDA | | ($25,883.06) | $3,559,645.83 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($25,883.06) | $3,559,645.83 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 07/30/2025 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 09/02/2025 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 09/30/2025 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 10/30/2025 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 12/01/2025 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 12/30/2025 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |

| | | | |
|---|---|---|---|
| 01/30/2026 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 03/02/2026 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |
| 03/04/2026 | Status Change | $0.00 | $3,559,645.83 |
| 03/04/2026 | Secondary Accrual Debit - INCREASE | $296,709.84 | $3,559,645.83 |
| 03/04/2026 | Accrued Interest Adjustment - DECREASE | ($296,709.84) | $3,559,645.83 |
| 03/30/2026 | Late Charge Assessed | $1,000.00 | $3,559,645.83 |

**First Western Bank & Trust**
900 South Broadway
Minot, ND 58701-4658
701-852-3711

## LLC (COMPANY) Activity Statement

**KDJ PROPERTIES LLC**
5750 S WASHINGTON ST
GRAND FORKS ND 58201-7593

## General Information

| | | | |
|---|---|---|---|
| Account Number: | XXXXXXXXXXXX0301 | Customer Number: | LAA4779 |
| Home Phone: | | Work Phone: | (701)610-1026 |
| Loan Term: | 60 | Loan Type: | COMM REM 365/360 IB2 |
| Interest Rate: | 4.000000 % | Origination Date: | 12/23/2020 |
| | | Date Range: | 1/1/0001-12/31/9999 |

Loan Officer: GERALD BROSSART
Collateral: 201 - COMMERCIAL REAL ESTATE
Call Report: Other Loans Secured by 1-4 Family Residential RE-1st Liens
Loan Purpose: RENT / RESALE - COMMERCIAL

## Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $386,000.00 | Payment Due Date: | 12/25/2025 |
| Current Balance: | $343,313.49 | Payment Amount: | $0.00 |
| Accrued Interest: | $0.00 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $38.14594 | Payment Type: | Scheduled payment includes accrued int. |

## Loan History

| Posting Date | Transaction Description | | Amount | Principal Balance |
|---|---|---|---|---|
| 12/23/2020 | Interest Rate Change | 4.00000000 % | $0.00 | |
| 12/23/2020 | Regular Principal Advance | | $386,000.00 | $386,000.00 |
| 01/25/2021 | Automatic Transfer from DDA | | ($1,950.00) | $385,465.33 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($534.67) | $385,465.33 |
| Interest Payment Split Out | Interest Payment | ($1,415.33) | $386,000.00 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 02/25/2021 | Automatic Transfer from DDA | ($1,950.00) | $384,843.04 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($622.29) | $384,843.04 |
| Interest Payment Split Out | Interest Payment | ($1,327.71) | $385,465.33 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 03/18/2021 | Automatic Transfer from DDA | ($1,950.00) | $384,090.33 |

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($752.71) | $384,090.33 |
| Interest Payment Split Out | Interest Payment | ($1,197.29) | $384,843.04 |

04/23/2021 Automatic Transfer from DDA ($1,950.00) $383,462.72

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($627.61) | $383,462.72 |
| Interest Payment Split Out | Interest Payment | ($1,322.39) | $384,090.33 |

05/24/2021 Automatic Transfer from DDA ($1,950.00) $382,790.79

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($671.93) | $382,790.79 |
| Interest Payment Split Out | Interest Payment | ($1,278.07) | $383,462.72 |

06/24/2021 Automatic Transfer from DDA ($1,950.00) $382,159.22

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($631.57) | $382,159.22 |
| Interest Payment Split Out | Interest Payment | ($1,318.43) | $382,790.79 |

07/22/2021 Automatic Transfer from DDA ($1,950.00) $381,483.01

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($676.21) | $381,483.01 |
| Interest Payment Split Out | Interest Payment | ($1,273.79) | $382,159.22 |

08/25/2021 Automatic Transfer from DDA ($1,950.00) $380,846.79

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($636.22) | $380,846.79 |
| Interest Payment Split Out | Interest Payment | ($1,313.78) | $381,483.01 |

09/24/2021 Automatic Transfer from DDA ($1,950.00) $380,208.59

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($638.20) | $380,208.59 |
| Interest Payment Split Out | Interest Payment | ($1,311.80) | $380,846.79 |

10/25/2021 Automatic Transfer from DDA ($1,950.00) $379,525.88

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($682.71) | $379,525.88 |
| Interest Payment Split Out | Interest Payment | ($1,267.29) | $380,208.59 |

11/26/2021 Automatic Transfer from DDA ($1,950.00) $378,883.14

| Payment Break Down<br>Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Principal Payment Split Out | Principal | ($642.74) | $378,883.14 |
| Interest Payment Split Out | Interest Payment | ($1,307.26) | $379,525.88 |

12/24/2021 Automatic Transfer from DDA ($1,950.00) $378,196.15

| Date | Transaction Description | Affects | Amount | Balance |
|---|---|---|---|---|
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($686.99) | $378,196.15 |
| | Interest Payment Split Out | Interest Payment | ($1,263.01) | $378,883.14 |
| 01/27/2022 | Automatic Transfer from DDA | | ($1,950.00) | $377,548.75 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($647.40) | $377,548.75 |
| | Interest Payment Split Out | Interest Payment | ($1,302.60) | $378,196.15 |
| 02/25/2022 | Automatic Transfer from DDA | | ($1,950.00) | $376,899.34 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($649.41) | $376,899.34 |
| | Interest Payment Split Out | Interest Payment | ($1,300.59) | $377,548.75 |
| 03/25/2022 | Automatic Transfer from DDA | | ($1,950.00) | $376,121.92 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($777.42) | $376,121.92 |
| | Interest Payment Split Out | Interest Payment | ($1,172.58) | $376,899.34 |
| 04/25/2022 | Automatic Transfer from DDA | | ($1,950.00) | $375,467.45 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($654.47) | $375,467.45 |
| | Interest Payment Split Out | Interest Payment | ($1,295.53) | $376,121.92 |
| 05/25/2022 | Automatic Transfer from DDA | | ($1,950.00) | $374,769.01 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($698.44) | $374,769.01 |
| | Interest Payment Split Out | Interest Payment | ($1,251.56) | $375,467.45 |
| 06/27/2022 | Automatic Transfer from DDA | | ($1,950.00) | $374,109.88 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($659.13) | $374,109.88 |
| | Interest Payment Split Out | Interest Payment | ($1,290.87) | $374,769.01 |
| 07/25/2022 | Automatic Transfer from DDA | | ($1,950.00) | $373,407.06 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($702.82) | $373,407.06 |
| | Interest Payment Split Out | Interest Payment | ($1,247.18) | $374,109.88 |
| 08/25/2022 | Automatic Transfer from DDA | | ($1,950.00) | $372,743.24 |
| | **Payment Break Down** | | | |
| | Principal Payment Split Out | Principal | ($663.82) | $372,743.24 |
| | Interest Payment Split Out | Interest Payment | ($1,286.18) | $373,407.06 |
| 09/27/2022 | Automatic Transfer from DDA | | ($1,950.00) | $372,077.13 |

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($666.11) | $372,077.13 |
| Interest Payment Split Out | Interest Payment | ($1,283.89) | $372,743.24 |

10/27/2022 Automatic Transfer from DDA ($1,950.00) $371,367.54

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($709.59) | $371,367.54 |
| Interest Payment Split Out | Interest Payment | ($1,240.41) | $372,077.13 |

11/28/2022 Automatic Transfer from DDA ($1,950.00) $370,696.85

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($670.69) | $370,696.85 |
| Interest Payment Split Out | Interest Payment | ($1,279.31) | $371,367.54 |

12/27/2022 Automatic Transfer from DDA ($1,950.00) $369,982.73

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($714.12) | $369,982.73 |
| Interest Payment Split Out | Interest Payment | ($1,235.88) | $370,696.85 |

01/26/2023 Automatic Transfer from DDA ($1,950.00) $369,307.27

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($675.46) | $369,307.27 |
| Interest Payment Split Out | Interest Payment | ($1,274.54) | $369,982.73 |

02/27/2023 Automatic Transfer from DDA ($1,950.00) $368,629.41

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($677.86) | $368,629.41 |
| Interest Payment Split Out | Interest Payment | ($1,272.14) | $369,307.27 |

04/11/2023 Automatic Transfer from DDA ($1,950.00) $367,826.40

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($803.01) | $367,826.40 |
| Interest Payment Split Out | Interest Payment | ($1,146.99) | $368,629.41 |

05/15/2023 Late Charge Assessed $50.00 $367,826.40
05/25/2023 Automatic Transfer from DDA ($3,950.00) $366,420.97

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($725.16) | $366,420.97 |
| Interest Payment Split Out | Interest Payment | ($1,224.84) | $367,146.13 |
| Late Charge Split Out | Late Charge | ($50.00) | $367,146.13 |
| Principal Payment Split Out | Principal | ($680.27) | $367,146.13 |
| Interest Payment Split Out | Interest Payment | ($1,269.73) | $367,826.40 |

06/26/2023 Automatic Transfer from DDA ($1,950.00) $365,733.08

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($687.89) | $365,733.08 |
| Interest Payment Split Out | Interest Payment | ($1,262.11) | $366,420.97 |

08/02/2023 Automatic Transfer from DDA ($1,950.00) $365,002.27

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($730.81) | $365,002.27 |
| Interest Payment Split Out | Interest Payment | ($1,219.19) | $365,733.08 |

08/25/2023 Automatic Transfer from DDA ($1,950.00) $364,310.15

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($692.12) | $364,310.15 |
| Interest Payment Split Out | Interest Payment | ($1,257.88) | $365,002.27 |

10/02/2023 Automatic Transfer from DDA ($1,950.00) $363,614.99

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($695.16) | $363,614.99 |
| Interest Payment Split Out | Interest Payment | ($1,254.84) | $364,310.15 |

11/06/2023 Automatic Transfer from DDA ($1,950.00) $362,877.59

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($737.40) | $362,877.59 |
| Interest Payment Split Out | Interest Payment | ($1,212.60) | $363,614.99 |

12/04/2023 Automatic Transfer from DDA ($1,950.00) $362,178.48

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($699.11) | $362,178.48 |
| Interest Payment Split Out | Interest Payment | ($1,250.89) | $362,877.59 |

01/12/2024 Automatic Transfer from DDA ($1,950.00) $361,436.44

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($742.04) | $361,436.44 |
| Interest Payment Split Out | Interest Payment | ($1,207.96) | $362,178.48 |

02/07/2024 Automatic Transfer from DDA ($1,950.00) $360,733.94

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($702.50) | $360,733.94 |
| Interest Payment Split Out | Interest Payment | ($1,247.50) | $361,436.44 |

03/13/2024 Automatic Transfer from DDA ($1,950.00) $360,026.42

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($707.52) | $360,026.42 |
| Interest Payment Split Out | Interest Payment | ($1,242.48) | $360,733.94 |

04/11/2024 Automatic Transfer from DDA ($1,950.00) $359,238.78

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($787.64) | $359,238.78 |
| Interest Payment Split Out | Interest Payment | ($1,162.36) | $360,026.42 |

05/01/2024 Automatic Transfer from DDA ($1,950.00) $358,527.93

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($710.85) | $358,527.93 |
| Interest Payment Split Out | Interest Payment | ($1,239.15) | $359,238.78 |

05/29/2024 Automatic Transfer from DDA ($1,950.00) $357,772.27

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($755.66) | $357,772.27 |
| Interest Payment Split Out | Interest Payment | ($1,194.34) | $358,527.93 |

07/15/2024 Late Charge Assessed $50.00 $357,772.27
07/25/2024 Automatic Transfer from DDA ($1,950.00) $357,054.93

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($717.34) | $357,054.93 |
| Interest Payment Split Out | Interest Payment | ($1,232.66) | $357,772.27 |

08/05/2024 Automatic Transfer from DDA ($1,950.00) $356,297.51

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($757.42) | $356,297.51 |
| Interest Payment Split Out | Interest Payment | ($1,192.58) | $357,054.93 |

09/05/2024 Automatic Transfer from DDA ($1,950.00) $355,575.68

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($721.83) | $355,575.68 |
| Interest Payment Split Out | Interest Payment | ($1,228.17) | $356,297.51 |

10/15/2024 Automatic Transfer from DDA ($1,950.00) $354,851.32

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($724.36) | $354,851.32 |
| Interest Payment Split Out | Interest Payment | ($1,225.64) | $355,575.68 |

10/31/2024 Automatic Transfer from DDA ($1,950.00) $354,086.57

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($764.75) | $354,086.57 |
| Interest Payment Split Out | Interest Payment | ($1,185.25) | $354,851.32 |

11/27/2024 Automatic Transfer from DDA ($1,950.00) $353,355.91

| | Payment Break Down | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Principal Payment Split Out | Principal | ($730.66) | $353,355.91 |
| Interest Payment Split Out | Interest Payment | ($1,219.34) | $354,086.57 |

| Date | Description | | Amount | Balance |
|---|---|---|---|---|
| 01/02/2025 | Automatic Transfer from DDA | | ($1,950.00) | $352,583.93 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($771.98) | $352,583.93 |
| | Interest Payment Split Out | Interest Payment | ($1,178.02) | $353,355.91 |
| 01/29/2025 | Automatic Transfer from DDA | | ($1,950.00) | $351,849.07 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($734.86) | $351,849.07 |
| | Interest Payment Split Out | Interest Payment | ($1,215.14) | $352,583.93 |
| 03/05/2025 | Automatic Transfer from DDA | | ($1,950.00) | $351,111.32 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($737.75) | $351,111.32 |
| | Interest Payment Split Out | Interest Payment | ($1,212.25) | $351,849.07 |
| 03/31/2025 | Automatic Transfer from DDA | | ($1,950.00) | $350,254.32 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($857.00) | $350,254.32 |
| | Interest Payment Split Out | Interest Payment | ($1,093.00) | $351,111.32 |
| 04/23/2025 | Automatic Transfer from DDA | | ($1,950.00) | $349,511.32 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($743.00) | $349,511.32 |
| | Interest Payment Split Out | Interest Payment | ($1,207.00) | $350,254.32 |
| 05/23/2025 | Automatic Transfer from DDA | | ($1,950.00) | $348,726.20 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($785.12) | $348,726.20 |
| | Interest Payment Split Out | Interest Payment | ($1,164.88) | $349,511.32 |
| 06/25/2025 | Automatic Transfer from DDA | | ($1,950.00) | $347,977.19 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($749.01) | $347,977.19 |
| | Interest Payment Split Out | Interest Payment | ($1,200.99) | $348,726.20 |
| 07/30/2025 | Automatic Transfer from DDA | | ($1,950.00) | $347,187.11 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($790.08) | $347,187.11 |
| | Interest Payment Split Out | Interest Payment | ($1,159.92) | $347,977.19 |
| 08/28/2025 | Automatic Transfer from DDA | | ($1,950.00) | $346,433.42 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($753.69) | $346,433.42 |
| | Interest Payment Split Out | Interest Payment | ($1,196.31) | $347,187.11 |

| | | | | |
|---|---|---|---|---|
| 09/24/2025 | Automatic Transfer from DDA | | ($1,950.00) | $345,676.94 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($756.48) | $345,676.94 |
| | Interest Payment Split Out | Interest Payment | ($1,193.52) | $346,433.42 |
| 10/24/2025 | Automatic Transfer from DDA | | ($1,950.00) | $344,879.11 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($797.83) | $344,879.11 |
| | Interest Payment Split Out | Interest Payment | ($1,152.17) | $345,676.94 |
| 11/19/2025 | Automatic Transfer from DDA | | ($1,950.00) | $344,116.94 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($762.17) | $344,116.94 |
| | Interest Payment Split Out | Interest Payment | ($1,187.83) | $344,879.11 |
| 12/24/2025 | Status Change | | $0.00 | $344,116.94 |
| 01/07/2026 | Regular Payment with Computer Split | | ($1,950.00) | $343,313.49 |
| | **Payment Break Down** | | | |
| | Transaction Description | Affects | Amount | Balance |
| | Principal Payment Split Out | Principal | ($803.45) | $343,313.49 |
| | Interest Payment Split Out | Interest Payment | ($1,146.55) | $344,116.94 |
| 01/14/2026 | Late Charge Assessed | | $50.00 | $343,313.49 |
| 03/04/2026 | Status Change | | $0.00 | $343,313.49 |
| 03/04/2026 | Secondary Accrual Debit - INCREASE | | $2,633.23 | $343,313.49 |
| 03/04/2026 | Accrued Interest Adjustment - DECREASE | | ($2,633.23) | $343,313.49 |

**First Western Bank & Trust**
900 South Broadway
Minot, ND 58701-4658
701-852-3711

## LLC (COMPANY) Activity Statement

**KIDNEY AND HYPERTENSION CENTER PLC**
5750 S WASHINGTON ST
GRAND FORKS ND 58201-7593

## General Information

| | | | |
|---|---|---|---|
| Account Number: | XXXXXXXXXXXX4359 | Customer Number: | PAA3645 |
| Home Phone: | | Work Phone: | (701)775-5800 |
| Loan Term: | 91 | Loan Type: | COMM REM 365/360 IB2 |
| Interest Rate: | 7.500000 % | Origination Date: | 12/24/2024 |
| | | Date Range: | 1/1/0001-12/31/9999 |

Loan Officer: GERALD BROSSART
Collateral: 201 - COMMERCIAL REAL ESTATE
Call Report: Sec by Non-farm Non-Residential Properties (Owner Occupied)
Loan Purpose: MEDICAL/DENTAL FACILITY

## Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $720,762.34 | Payment Due Date: | 08/05/2025 |
| Current Balance: | $720,762.34 | Payment Amount: | $6,904.90 |
| Accrued Interest: | $0.00 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $150.15882 | Payment Type: | Scheduled payment includes accrued int. |

## Loan History

| Posting Date | Transaction Description | | Amount | Principal Balance |
|---|---|---|---|---|
| 12/24/2024 | Interest Rate Change | 7.50000000 % | $0.00 | |
| 12/31/2024 | Effective Date Debit Interest Adj. | | $1,051.11 | |
| 12/31/2024 | Regular Principal Advance | | $720,762.34 | $720,762.34 |
| 06/05/2025 | Automatic Transfer from DDA | | ($6,904.90) | $720,762.34 |

Payment Break Down

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($6,904.90) | $720,762.34 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 07/09/2025 | Automatic Transfer from DDA | ($6,904.90) | $720,762.34 |

Payment Break Down

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($6,904.90) | $720,762.34 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 08/20/2025 | Late Charge Assessed | $345.25 | $720,762.34 |
| 09/22/2025 | Late Charge Assessed | $345.25 | $720,762.34 |

| | | | |
|---|---|---|---|
| 10/20/2025 | Late Charge Assessed | $345.25 | $720,762.34 |
| 11/20/2025 | Late Charge Assessed | $345.25 | $720,762.34 |
| 12/22/2025 | Late Charge Assessed | $345.25 | $720,762.34 |
| 01/20/2026 | Late Charge Assessed | $345.25 | $720,762.34 |
| 02/20/2026 | Late Charge Assessed | $345.25 | $720,762.34 |
| 03/04/2026 | Status Change | $0.00 | $720,762.34 |
| 03/04/2026 | Secondary Accrual Debit - INCREASE | $51,509.28 | $720,762.34 |
| 03/04/2026 | Accrued Interest Adjustment - DECREASE | ($51,509.28) | $720,762.34 |
| 03/20/2026 | Late Charge Assessed | $345.25 | $720,762.34 |

**First Western Bank & Trust**
900 South Broadway
Minot, ND 58701-4658
701-852-3711

## LLC (COMPANY) Activity Statement

**KIDNEY AND HYPERTENSION CENTER PLC**
5750 S WASHINGTON ST
GRAND FORKS ND 58201-7593

## General Information

| | | | |
|---|---|---|---|
| Account Number: | XXXXXXXXXXXX9021 | Customer Number: | PAA3645 |
| Home Phone: | | Work Phone: | (701)775-5800 |
| Loan Term: | 60 | Loan Type: | SBA LOANS - COMM |
| Interest Rate: | 7.500000 % | Origination Date: | 08/16/2021 |
| | | Date Range: | 1/1/0001-12/31/9999 |
| Loan Officer: | GERALD BROSSART | | |
| Collateral: | 201 - COMMERCIAL REAL ESTATE | | |
| Call Report: | Sec by Non-farm Non-Residential Properties (Owner Occupied) | | |
| Loan Purpose: | MEDICAL/DENTAL FACILITY | | |

## Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $1,000,000.00 | Payment Due Date: | 07/15/2025 |
| Current Balance: | $996,882.00 | Payment Amount: | $0.00 |
| Accrued Interest: | $0.00 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $207.68375 | Payment Type: | Scheduled payment includes accrued int. |

## Loan History

| Posting Date | Transaction Description | | Amount | Principal Balance |
|---|---|---|---|---|
| 08/16/2021 | Interest Rate Change | 4.50000000 % | $0.00 | |
| 09/21/2021 | Telephone Transfer to DDA | | $237,529.00 | $237,529.00 |
| 10/15/2021 | Automatic Transfer from DDA | | ($712.58) | $237,529.00 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($712.58) | $237,529.00 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 10/27/2021 | Telephone Transfer to DDA | $206,509.00 | $444,038.00 |
| 11/24/2021 | Interest Pmt Only-Does Adv Due Dates | ($1,410.89) | $444,038.00 |
| 12/15/2021 | Automatic Transfer from DDA | ($1,665.14) | $444,038.00 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($1,665.14) | $444,038.00 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 12/16/2021 | Telephone Transfer to DDA | $256,940.00 | $700,978.00 |

01/18/2022 Automatic Transfer from DDA ($2,684.17) $700,978.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($2,684.17) | $700,978.00 |

02/15/2022 Automatic Transfer from DDA ($2,716.29) $700,978.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($2,716.29) | $700,978.00 |

03/11/2022 Telephone Transfer to DDA $135,565.00 $836,543.00
03/15/2022 Automatic Transfer from DDA ($2,453.42) $836,543.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($2,453.42) | $836,543.00 |

04/25/2022 Automatic Transfer from DDA ($3,309.39) $836,543.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,309.39) | $836,543.00 |

05/11/2022 Telephone Transfer to DDA $56,854.00 $893,397.00
05/16/2022 Automatic Transfer from DDA ($3,137.04) $893,397.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,137.04) | $893,397.00 |

06/15/2022 Automatic Transfer from DDA ($3,490.34) $893,397.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,490.34) | $893,397.00 |

07/15/2022 Automatic Transfer from DDA ($3,350.24) $893,397.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,350.24) | $893,397.00 |

08/02/2022 Telephone Transfer to DDA $38,785.00 $932,182.00
08/15/2022 Automatic Transfer from DDA ($3,461.91) $932,182.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,461.91) | $932,182.00 |

08/31/2022 Telephone Transfer to DDA $42,070.00 $974,252.00
09/15/2022 Automatic Transfer from DDA ($3,675.23) $974,252.00

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,675.23) | $974,252.00 |

10/06/2022 Telephone Transfer to DDA $22,630.00 $996,882.00
10/20/2022 Automatic Transfer from DDA ($3,732.33) $996,882.00

| Date | Transaction Description | Affects | Amount | Balance |
|---|---|---|---|---|
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,732.33) | $996,882.00 |
| 11/16/2022 | Automatic Transfer from DDA | | ($3,888.37) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,888.37) | $996,882.00 |
| 12/15/2022 | Automatic Transfer from DDA | | ($3,738.31) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,738.31) | $996,882.00 |
| 01/17/2023 | Automatic Transfer from DDA | | ($3,862.92) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,862.92) | $996,882.00 |
| 02/15/2023 | Automatic Transfer from DDA | | ($3,862.92) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,862.92) | $996,882.00 |
| 03/15/2023 | Automatic Transfer from DDA | | ($3,489.08) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,489.08) | $996,882.00 |
| 04/25/2023 | Late Charge Assessed | | $1,290.19 | $996,882.00 |
| 04/26/2023 | Automatic Transfer from DDA | | ($5,153.11) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($1,290.19) | $996,882.00 |
| | Interest Payment Split Out | Interest Payment | ($3,862.92) | $996,882.00 |
| 05/15/2023 | Automatic Transfer from DDA | | ($3,738.31) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Late Charge Split Out | Late Charge | ($1,290.19) | $996,882.00 |
| | Interest Payment Split Out | Interest Payment | ($2,448.12) | $996,882.00 |
| 06/15/2023 | Automatic Transfer from DDA | | ($3,862.92) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,862.92) | $996,882.00 |
| 07/19/2023 | Automatic Transfer from DDA | | ($3,738.30) | $996,882.00 |
| | **Payment Break Down** | | | |
| | Interest Payment Split Out | Interest Payment | ($3,738.30) | $996,882.00 |
| 08/15/2023 | Automatic Transfer from DDA | | ($3,862.92) | $996,882.00 |

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,862.92) | $996,882.00 |

| | | | | |
|---|---|---|---|---|
| 09/20/2023 | Automatic Transfer from DDA | | ($3,862.92) | $996,882.00 |

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($3,862.92) | $996,882.00 |

| | | | | |
|---|---|---|---|---|
| 10/04/2023 | Interest Rate Change | 8.25000000 % | $0.00 | $996,882.00 |
| 10/04/2023 | Generated Accrual Adjustment | | $623.05 | $996,882.00 |
| 10/04/2023 | Loan Extension | | $0.00 | $996,882.00 |
| 10/05/2023 | Interest Payment Only | | ($2,367.59) | $996,882.00 |
| 11/27/2023 | Late Charge Assessed | | $510.90 | $996,882.00 |
| 12/05/2023 | Automatic Transfer from DDA | | ($10,728.94) | $996,882.00 |

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($510.90) | $996,882.00 |
| Interest Payment Split Out | Interest Payment | ($10,218.04) | $996,882.00 |

| | | | | |
|---|---|---|---|---|
| 12/20/2023 | Automatic Transfer from DDA | | ($6,853.56) | $996,882.00 |

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($510.90) | $996,882.00 |
| Interest Payment Split Out | Interest Payment | ($6,342.66) | $996,882.00 |

| | | | | |
|---|---|---|---|---|
| 01/25/2024 | Late Charge Assessed | | $328.56 | $996,882.00 |
| 02/26/2024 | Late Charge Assessed | | $354.10 | $996,882.00 |
| 03/25/2024 | Late Charge Assessed | | $331.26 | $996,882.00 |
| 04/12/2024 | Automatic Transfer from DDA | | ($7,413.27) | $996,882.00 |

| Payment Break Down | | | |
|---|---|---|---|
| Transaction Description | Affects | Amount | Balance |
| Interest Payment Split Out | Interest Payment | ($842.15) | $996,882.00 |
| Interest Payment Split Out | Interest Payment | ($6,571.12) | $996,882.00 |

| | | | | |
|---|---|---|---|---|
| 04/25/2024 | Late Charge Assessed | | $354.10 | $996,882.00 |
| 05/28/2024 | Late Charge Assessed | | $713.34 | $996,882.00 |
| 06/25/2024 | Late Charge Assessed | | $354.10 | $996,882.00 |
| 07/25/2024 | Late Charge Assessed | | $342.68 | $996,882.00 |
| 08/26/2024 | Late Charge Assessed | | $354.10 | $996,882.00 |
| 09/25/2024 | Late Charge Assessed | | $354.10 | $996,882.00 |
| 10/25/2024 | Late Charge Assessed | | $342.68 | $996,882.00 |
| 11/25/2024 | Late Charge Assessed | | $354.10 | $996,882.00 |
| 12/26/2024 | Late Charge Assessed | | $342.68 | $996,882.00 |
| 12/31/2024 | Interest Rate Change | 7.50000000 % | $0.00 | $996,882.00 |
| 12/31/2024 | Generated Accrual Adjustment | | ($145.37) | $996,882.00 |
| 12/31/2024 | Interest Payment Only | | ($77,745.38) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | | ($354.10) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | | ($331.26) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | | ($510.90) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | | ($328.56) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | | ($354.10) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | | ($713.34) | $996,882.00 |

| | | | |
|---|---|---|---|
| 12/31/2024 | Reversed Late Charge Assessed | ($354.10) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | ($342.68) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | ($354.10) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | ($354.10) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | ($342.68) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | ($354.10) | $996,882.00 |
| 12/31/2024 | Reversed Late Charge Assessed | ($342.68) | $996,882.00 |
| 07/25/2025 | Late Charge Assessed | $481.19 | $996,882.00 |
| 08/25/2025 | Late Charge Assessed | $481.19 | $996,882.00 |
| 09/25/2025 | Late Charge Assessed | $481.19 | $996,882.00 |
| 10/27/2025 | Late Charge Assessed | $481.19 | $996,882.00 |
| 11/25/2025 | Late Charge Assessed | $481.19 | $996,882.00 |
| 12/26/2025 | Late Charge Assessed | $481.19 | $996,882.00 |
| 01/26/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 02/25/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 03/04/2026 | Status Change | $0.00 | $996,882.00 |
| 03/04/2026 | Secondary Accrual Debit - INCREASE | $90,342.44 | $996,882.00 |
| 03/04/2026 | Accrued Interest Adjustment - DECREASE | ($90,342.44) | $996,882.00 |
| 03/25/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 04/27/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 05/26/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 06/25/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 07/27/2026 | Late Charge Assessed | $481.19 | $996,882.00 |
| 08/25/2026 | Late Charge Assessed | $481.19 | $996,882.00 |

**First Western Bank & Trust**
900 South Broadway
Minot, ND 58701-4658
701-852-3711

## LLC (COMPANY) Activity Statement

**KIDNEY AND HYPERTENSION CENTER PLC**
5750 S WASHINGTON ST
GRAND FORKS ND 58201-7593

## General Information

| | | | |
|---|---|---|---|
| Account Number: | XXXXXXXXXXXX4364 | Customer Number: | PAA3645 |
| Home Phone: | | Work Phone: | (701)775-5800 |
| Loan Term: | 18 | Loan Type: | COMM REM 365/360 IB2 |
| Interest Rate: | 7.500000 % | Origination Date: | 12/24/2024 |
| | | Date Range: | 1/1/0001-12/31/9999 |

Loan Officer: GERALD BROSSART
Collateral: 201 - COMMERCIAL REAL ESTATE
Call Report: Sec by Non-farm Non-Residential Properties (Owner Occupied)
Loan Purpose: MEDICAL/DENTAL FACILITY

## Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $1,189,188.04 | Payment Due Date: | 07/09/2025 |
| Current Balance: | $1,189,188.04 | Payment Amount: | $0.00 |
| Accrued Interest: | $0.00 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $247.74750 | Payment Type: | Scheduled payment includes accrued int. |

## Loan History

| Posting Date | Transaction Description | | Amount | Principal Balance |
|---|---|---|---|---|
| 12/24/2024 | Interest Rate Change | 7.50000000 % | $0.00 | |
| 12/31/2024 | Effective Date Debit Interest Adj. | | $1,734.23 | |
| 12/31/2024 | Regular Principal Advance | | $1,189,188.04 | $1,189,188.04 |
| 06/06/2025 | Automatic Transfer from DDA | | ($11,000.00) | $1,189,188.04 |

Payment Break Down

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($11,000.00) | $1,189,188.04 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 06/18/2025 | Automatic Transfer from DDA | ($1,000.00) | $1,189,188.04 |

Payment Break Down

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Escrow No. 1 Balance Increase | Escrow Balance 1 | ($598.84) | $1,189,188.04 |
| Interest Payment Split Out | Interest Payment | ($401.16) | $1,189,188.04 |

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 06/24/2025 | Late Charge Assessed | $648.65 | $1,189,188.04 |

| | | | |
|---|---|---|---|
| 06/25/2025 | Automatic Transfer from DDA | ($7,000.00) | $1,189,188.04 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Escrow No. 1 Balance Increase | Escrow Balance 1 | ($7,000.00) | $1,189,188.04 |

| | | | |
|---|---|---|---|
| 07/09/2025 | Automatic Transfer from DDA | ($4,000.00) | $1,189,188.04 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Escrow No. 1 Balance Increase | Escrow Balance 1 | ($4,000.00) | $1,189,188.04 |

| | | | |
|---|---|---|---|
| 07/23/2025 | Automatic Transfer from DDA | ($11,000.00) | $1,189,188.04 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Interest Payment Split Out | Interest Payment | ($11,000.00) | $1,189,188.04 |

| | | | |
|---|---|---|---|
| 07/24/2025 | Late Charge Assessed | $698.65 | $1,189,188.04 |
| 07/30/2025 | Automatic Transfer from DDA | ($5,000.00) | $1,189,188.04 |

**Payment Break Down**

| Transaction Description | Affects | Amount | Balance |
|---|---|---|---|
| Escrow No. 1 Balance Increase | Escrow Balance 1 | ($4,598.84) | $1,189,188.04 |
| Interest Payment Split Out | Interest Payment | ($401.16) | $1,189,188.04 |

| | | | |
|---|---|---|---|
| 08/25/2025 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 09/24/2025 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 10/24/2025 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 11/24/2025 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 12/24/2025 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 01/26/2026 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 02/24/2026 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |
| 03/04/2026 | Status Change | $0.00 | $1,189,188.04 |
| 03/04/2026 | Secondary Accrual Debit - INCREASE | $84,967.84 | $1,189,188.04 |
| 03/04/2026 | Accrued Interest Adjustment - DECREASE | ($84,967.84) | $1,189,188.04 |
| 03/24/2026 | Late Charge Assessed | $1,000.00 | $1,189,188.04 |

**First Western Bank & Trust**
900 South Broadway
Minot, ND 58701-4658
701-852-3711

KDJ INVESTMENT GROUP LLC
5750 S WASHINGTON ST
GRAND FORKS ND 58201-7593

## General Information

| | | | |
|---|---|---|---|
| Account Number: | XXXXXXXXXXXX6599 | Customer Number: | PAA3645 |
| Home Phone: | | Work Phone: | (701)775-5800 |
| Loan Term: | 36 | Loan Type: | COMM REM 365/360 IB2 |
| Interest Rate: | 0.000000 % | Origination Date: | 12/24/2024 |
| | | Date Range: | 1/1/0001-12/31/9999 |
| Loan Officer: | GERALD BROSSART | | |
| Collateral: | 201 - COMMERCIAL REAL ESTATE | | |
| Call Report: | Sec by Non-farm Non-Residential Properties (Owner Occupied) | | |
| Loan Purpose: | MEDICAL/DENTAL FACILITY | | |

## Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $468,629.98 | Payment Due Date: | 12/01/2026 |
| Current Balance: | $468,629.98 | Payment Amount: | $0.00 |
| Accrued Interest: | $0.00 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $0.00000 | Payment Type: | Scheduled payment includes accrued int. |

## Loan History

| Posting Date | Transaction Description | Amount | Principal Balance |
|---|---|---|---|
| 12/24/2024 | Interest Rate Change | $0.00 | |
| 12/31/2024 | Regular Principal Advance | $468,629.98 | $468,629.98 |

# Grand Forks County

Shopping Cart: 0 items [$0.00]

New Search | History | Payoff | PayTaxes | Help

**Parcel #:** 44-1355-00041-001

**Status:** Delinquent

**Receipt:** 18455

**2025 Owner(s):**
KDJ PROPERTIES, LLC

**Mailing Address:**
645 BEACON CIR
GRAND FORKS, ND 582012905

**Levy District:**
4405, District 4405

**2025 Value:**

| | |
|---|---|
| **True And Full Value** | $674,000 |
| **Taxable:** | $30,330 |
| **Disabled Vet Credit:** | $0 |
| **Homestead Credit:** | $0 |
| **Net Taxable:** | $30,330 |

Detail

**2025 Taxes:** View Pie Charts

| | | | |
|---|---|---|---|
| **First Half:** | $5,294.28 | **Due:** | 3/1/2026 |
| **Second Half:** | $5,203.26 | **Due:** | 10/15/2026 |
| **Total:** | $10,497.54 | | |

Show Current Tax Bill

Detail

**2025 Payments:**

| | |
|---|---|
| **First Half:** | $0.00 |
| **Second Half:** | $0.00 |
| **Discount:** | $0.00 |
| **Total:** | $0.00 |

(May include penalty & interest)

**2025 Legal Records:**

**Geo Code: Instru#:** 763742 **Doc Type:** WD **Date:** 2016-05-31

**Property address:** 645 BEACON CIR, GRAND FORKS ND 58201
**Subdivision:** (441355) CORNERSTONE ESTATES ADDITION **Lot:** J **Block:** 2
**Legal:** 645 BEACON CIRCLE LOT J BLK
2 (REPLAT OF LOTS 15 THRU 33)

**Note:** The accuracy of this data is not guaranteed.
Web data was last updated 09/02/2026 08:30 AM.

Send Payments To:

Grand Forks County Treasurer
P. O. Box 5638
Grand Forks, ND 58206-5638

Phone: 701-780-8292

tyler technologies

© 2026 Tyler Technologies, Inc. iTax Version 2026.2.6.0

# Grand Forks County

Shopping Cart: 0 items [$0.00]

New Search | Detail | Payoff | Help

**Parcel #:** 44-1355-00041-001

**Status:** Delinquent

**Type:** RE

**Owner:** KDJ PROPERTIES, LLC

**History:**

| Tax Year | Statement# | Bill Date | Bill Amount | Date Paid | ** Paid Amount | Notes |
|---|---|---|---|---|---|---|
| 2025 | 18455 | 12/10/2025 | $10,497.54 | | $0.00<br>$0.00 | |
| 2024 | 18479 | 11/21/2024 | $9,782.67 | | $0.00<br>$0.00 | |
| 2023 | 18651 | 11/07/2023 | $9,783.06 | | $0.00<br>$0.00 | |
| 2023 | 36959 | 05/08/2026 | $50.00 | | $0.00<br>$0.00 | |
| 2022 | 36131 | 07/01/2024 | $218.03 | 7/1/2024 | $258.36<br>$0.00 | |
| 2022 | 36132 | 07/01/2024 | $8,666.61 | 4/30/2025<br>4/30/2025 | $5,717.27<br>$5,123.99 | |
| 2021 | 18651 | 11/17/2021 | $8,612.77 | 7/1/2024<br>7/1/2024 | $5,951.79<br>$5,044.78 | |
| 2021 | 36272 | 05/09/2024 | $50.00 | 7/1/2024 | $50.00<br>$0.00 | |
| 2020 | 35590 | 04/25/2022 | $37.69 | 4/25/2022 | $43.72<br>$0.00 | |
| 2020 | 35591 | 04/25/2022 | $8,477.10 | 5/4/2023<br>5/4/2023 | $5,764.62<br>$4,889.00 | |
| 2019 | 18634 | 11/14/2019 | $8,745.40 | 4/25/2022<br>4/25/2022 | $5,953.41<br>$4,995.05 | |
| 2018 | 18898 | 11/26/2018 | $4,314.99 | 9/25/2019 | $4,703.35<br>$0.00 | |
| 2018 | 34608 | 09/25/2019 | $3,345.81 | 9/25/2019 | $0.00<br>$3,345.81 | |
| 2018 | 34609 | 09/25/2019 | $388.36 | 9/25/2019 | $0.00<br>$388.36 | |
| 2017 | 49353 | 11/22/2017 | $8,356.41 | 1/2/2018<br>1/2/2018 | $4,599.88<br>$3,380.88 | |
| 2016 | 18599 | 12/07/2016 | $7,741.99 | 12/29/2016<br>12/29/2016 | $4,311.17<br>$3,087.74 | |
| 2015 | 20168473 | 12/11/2015 | $5,414.65 | 1/20/2016<br>1/20/2016 | $3,053.59<br>$2,136.20 | |

Case 26-07025 Doc 1-18 Filed 11/02/26 Entered 11/02/26 06:59:06 Desc Docket Entries 37 Through 74 - Motion for Summary Judgment and Exhibits Thereto Page 117 of 121

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2014 | 1417674 | 12/10/2014 | $5,312.00 | 1/22/2015<br>1/22/2015 | | $3,353.28<br>$1,960.92 | |
| 2013 | 1317685 | 11/14/2013 | $4,779.66 | 12/31/2013<br>12/31/2013 | | $2,931.84<br>$1,663.03 | |
| 2012 | 1217692 | 11/06/2012 | $1,682.87 | 4/10/2013<br>4/10/2013 | | $1,446.50<br>$278.50 | |
| 2011 | 1117648 | 11/08/2011 | $1,714.09 | 10/19/2012<br>10/19/2012 | | $1,613.76<br>$289.60 | |
| 2010 | 1017625 | 11/17/2010 | $1,772.47 | 10/19/2012<br>10/19/2012 | | $1,830.60<br>$314.90 | |

**** Paid Amount may include penalty, interest, & discounts**

**Note:** The accuracy of this data is not guaranteed.
Web data was last updated 09/02/2026 08:30 AM.

Send Payments To:

Grand Forks County Treasurer
P. O. Box 5638
Grand Forks, ND 58206-5638

Phone: 701-780-8292

tyler technologies

© 2026 Tyler Technologies, Inc. iTax Version 2026.2.6.0

# Grand Forks County

Shopping Cart: 0 Items [$0.00]

New Search | History | Payoff | Pay Taxes | Help

**Parcel #:** 44-2122-00035-000

**Status:** Delinquent

**Receipt:** 21690

**2025 Owner(s):**
KDJ INVESTMENT GROUP, LLC

**Mailing Address:**
5750 S WASHINGTON ST
GRAND FORKS, ND 58201

**Levy District:**
4405, District 4405

**2025 Value:**

| | |
|---|---|
| **True And Full Value** | $5,138,000 |
| **Taxable:** | $256,900 |
| **Disabled Vet Credit:** | $0 |
| **Homestead Credit:** | $0 |
| **Net Taxable:** | $256,900 |

Detail

**2025 Taxes:** View Pie Charts

| | | | |
|---|---|---|---|
| **First Half:** | $67,443.79 | **Due:** | 3/1/2026 |
| **Second Half:** | $44,072.48 | **Due:** | 10/15/2026 |
| **Total:** | $111,516.27 | | |

Show Current Tax Bill

Detail

**2025 Payments:**

| | |
|---|---|
| **First Half:** | $0.00 |
| **Second Half:** | $0.00 |
| **Discount:** | $0.00 |
| **Total:** | $0.00 |

(May include penalty & interest)

**2025 Legal Records:**

**Geo Code: Instru#:** 798055 **Doc Type:** WD **Date:** 2019-12-26

**Property address:** 5750 S WASHINGTON ST, GRAND FORKS ND 58201
**Subdivision:** (442122) KINGS VIEW THIRD RESUBDIVISION **Lot:** 1 **Block:** 4
**Legal:** 5750 S WASHINGTON ST
LOT 1 BLK 4
**Acres:** 3.73

**Note:** The accuracy of this data is not guaranteed.
Web data was last updated 09/02/2026 08:30 AM.

Send Payments To:

Grand Forks County Treasurer
P. O. Box 5638
Grand Forks, ND 58206-5638

Phone: 701-780-8292

Case 26-07025 Doc 1-18 Filed 11/02/26 Entered 11/02/26 06:59:06 Desc Docket Entries 37 Through 74 - Motion for Summary Judgment and Exhibits Thereto Page 119 of 121

tyler technologies

© 2026 Tyler Technologies, Inc. iTax Version 2026.2.6.0

# Grand Forks County

Shopping Cart: 0 items [$0.00]

New Search | Detail | Payoff | Help

**Parcel #:** 44-2122-00035-000

**Status:** Delinquent

**Type:** RE

**Owner:** KDJ INVESTMENT GROUP, LLC

**History:**

| Tax Year | Statement# | Bill Date | Bill Amount | Date Paid | ** Paid Amount | Notes |
|---|---|---|---|---|---|---|
| 2025 | 21690 | 12/10/2025 | $111,516.27 | | $0.00<br>$0.00 | |
| 2024 | 21692 | 11/21/2024 | $109,956.68 | | $0.00<br>$0.00 | |
| 2023 | 21840 | 11/07/2023 | $104,967.56 | | $0.00<br>$0.00 | |
| 2023 | 36977 | 05/08/2026 | $50.00 | | $0.00<br>$0.00 | |
| 2022 | 21723 | 11/18/2022 | $92,011.95 | 10/5/2023<br>10/5/2023 | $63,794.29<br>$33,485.08 | |
| 2021 | 21651 | 11/17/2021 | $25,196.24 | 4/25/2022<br>4/25/2022 | $25,907.74<br>$43.09 | |
| 2020 | 21486 | 11/19/2020 | $25,621.98 | 4/25/2022<br>4/25/2022 | $29,672.63<br>$46.32 | |
| 2019 | 21514 | 11/14/2019 | $21,025.05 | 12/27/2019<br>12/27/2019 | $20,982.54<br>$38.26 | |
| 2018 | 21602 | 11/26/2018 | $6,757.33 | 2/15/2019<br>2/15/2019 | $6,715.48<br>$37.66 | |
| 2017 | 51988 | 11/22/2017 | $6,918.52 | 2/14/2018<br>2/14/2018 | $6,876.74<br>$37.60 | |
| 2016 | 21238 | 12/07/2016 | $8,664.42 | 2/14/2017<br>2/14/2017 | $8,624.73<br>$35.72 | |
| 2015 | 20171078 | 12/11/2015 | $171.71 | 2/12/2016<br>2/12/2016 | $129.71<br>$38.00 | |

**** Paid Amount may include penalty, interest, & discounts**

**Note:** The accuracy of this data is not guaranteed.
Web data was last updated 09/02/2026 08:30 AM.

Send Payments To:

Grand Forks County Treasurer
P. O. Box 5638

Case 26-07025 Doc 1-18 Filed 11/02/26 Entered 11/02/26 06:59:06 Desc Docket Entries 37 Through 74 - Motion for Summary Judgment and Exhibits Thereto Page 121 of 121

Grand Forks, ND 58206-5638

Phone: 701-780-8292

© 2026 Tyler Technologies, Inc. iTax Version 2026.2.6.0